Torivio M. ACOSTA, Petitioner,

v.

H. R. LANDON, District Director United States Immigration and Naturalization Service, Respondent.

No. 17175.

United States District Court
S. D. California, Central Division.

Oct. 21, 1954.

Wendell H. Davis, Los Angeles, Cal., for petitioner.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., Max F. Deutz, Glendale, Cal., and James R. Dooley, Asst. U. S. Attys., Los Angeles, Cal., by James R. Dooley, Los Angeles, Cal., for respondents.

BYRNE, District Judge.

Acosta is a native of Mexico who was admitted to the United States for permanent residence on March 11, 1915, at El Paso, Texas. He has resided continuously in this country since that time, with the exception of temporary absences of a few hours duration. He married a native-born citizen of the United States in 1933. They have three American-born daughters who are 20, 17 and 13 years of age respectively, and a two-and-one-half-year-old adopted son who also was born in this country.

Approximately November 6, 1952, Acosta was arrested on a warrant charging that he was deportable as an alien who, since entry, had been a member of the Communist Party of the United States. On April 3, 1953, following a hearing, a special inquiry officer rendered a decision finding that petitioner was a member of the Communist Party "from approximately early in 1937 until about November, 1937 or sometime in 1938", and ordering that he be deported from the United States. His application for suspension of deportation was denied "on the ground that he is statutorily ineligible therefor". An appeal to the Board of Immigration Appeals was dis-

missed. By this petition for writ of habeas corpus he seeks review of the administrative proceedings.

 Deportation proceedings are subject to review under § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Rubinstein v. Brownell, 1953, 92 U.S.App.D.C. 328, 206 F.2d 449, affirmed by an equally divided court sub nom. Brownell v. Rubinstein, 1954, 346 U.S. 929, 74 S.Ct. 319; Aguilera-Flores v. Landon, D.C.S.D.Cal.1954, 125 F.Supp. 55. Judicial review may be had in a habeas corpus proceeding, 5 U.S.C.A. § 1009(b), and on such review the court must hold unlawful and set aside agency action, findings, and conclusions unsupported by substantial evidence. 5 U.S. C.A. § 1009(e). The court shall review the whole record or such portions as may be cited by any party, and due account shall be taken of the rule of prejudicial error. 5 U.S.C.A. § 1009(e); Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

It is the contention of Acosta that the order for his deportation and the findings upon which it was based are not supported by substantial evidence in that the Government witnesses were impeached in such a manner as to make their testimony impossible of belief. He also contends that error was committed in the exclusion of evidence, and that the hearing officer did not act with impartiality.

At the hearing the Government witness Chase testified that he was present at the time Acosta became a member of the Communist Party, and attended with petitioner some 25 "unit" meetings that were restricted to such members. The other Government witness, Salinas, testified that he was present at such a "unit" meeting with petitioner on one or two occasions, at least on one for certain, and that such meetings were restricted to members of the Party. The record shows some confusion, inconsistency, and faulty memory on the part of Salinas. He was, however, quite positive that he saw petitioner at one "unit" meeting

at least, and that only members of the Party attended that meeting.

Witnesses for petitioner were his wife, a former employer, a former supervisor, and himself. Petitioner denied he was ever a member of the Party or that he was ever present at such meetings as those described by the Government witnesses. The former employer and the former supervisor testified in substance that they had no reason to believe petitioner was ever a member of the Party. Petitioner's wife testified that she went with her husband to most of the meetings he attended and that they were all just union meetings; that she handled all of the family's money matters and that the only dues or assessments she paid were union dues (nothing paid to any Communist organization); that she knew her husband was not a Party member because of the manner in which he brought up their children.

There was testimony attacking the credibility of the witness Chase. It was testified that Chase and others with food and drink had come to the petitioner's house to influence his vote in a coming union meeting; that both Chase and his wife tried to persuade petitioner and his wife to take sides with Chase at that meeting; that notwithstanding such tactics, petitioner at the meeting urged and voted that Chase be ousted from the union; that Chase was in fact ousted; that the disappearance of a union "slush" fund might have been connected with this ouster of Chase; that not very long after Chase left the union he made a statement to the Department of Immigration on petitioner's membership in the Party which resulted in petitioner's application for citizenship being denied. Chase admitted going to petitioner's house, denied trying to influence petitioner or his wife, admitted petitioner took the floor at the union meeting on the subject of his being ousted, admitted he was ousted and that he made the statement to the Immigration Department, denied all enmity or ill will toward petitioner. In addition, Chase admitted

**438**

that he had been arrested about nine times in connection with Communist activities and had been convicted once.

Petitioner argues that, even if it be said there is substantial evidence that he did attend the "unit" meetings, still attendance at such meetings does not prove he was a Party member. He relies on a statement made in the case of Bridges v. United States, 9 Cir., 1952, 199 F.2d 811, at page 836: "It is true that a number of the witnesses described some of these meetings which Bridges attended, and at some of which he presided, as 'closed' Communist meetings. The logical fallacy in concluding from this that Bridges must therefore have been a Party member is that it assumes the truth of that which is sought to be proven. If, in fact, Bridges was not a Party member, his presence at such a meeting would mean no more than that he attended a meeting at which every other person present was a Party member." This statement, however, does not say that attendance at the closed meetings was not evidence of Party membership. It only says that it was not conclusive evidence. Such evidence, although inconclusive and insufficient in itself, is relevant to the issue of Party membership. Here there was testimony by Chase that he was present when petitioner joined the Party.

There is substantial evidence of Party membership if the testimony of the witness Chase is to be believed. As has already been noted, the inquiry officer had good reason to believe that the witness Chase was biased against petitioner. Petitioner was instrumental in having Chase ousted from an executive position in the union and from the union itself. Chase's subsequent statement to the Department of Immigration could hardly be looked upon as a gesture of good will. And it was this same statement that Chase used to refresh his memory just prior to testifying at petitioner's deportation hearing. Notwithstanding the testimony tending to show bias on the part of Chase, the inquiry officer believed he was telling the truth.

Credibility of witnesses is ordinarily to be determined by the trier of fact—in this instance the inquiry officer. Morikichi Suwa v. Carr, 9 Cir., 1937, 88 F.2d 119. It is the inquiry officer in a deportation proceeding who is in a position to observe the demeanor of witnesses, and his decision on the question of credibility should therefore rarely be disturbed. See N. L. R. B. v. Dinion Coil Co., 2 Cir., 1952, 201 F.2d 484, for a good discussion on the weight to be given findings based on "demeanor evidence". However, testimony should be credited or discredited not on mere whim or caprice, but on a proper evaluation of the credibility of the witnesses. Victor Products Corp. v. N. L. R. B., 1953, 93 U.S.App. D.C. 56, 208 F.2d 834. The more important credibility is in a particular case, the more significant is the report of the inquiry officer. As was said in the Universal Camera Corp. case, supra, 340 U.S. at page 496, 71 S.Ct. at page 469: "The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case."

In this case the critical issue of whether Acosta was a member of the Communist Party turned on the credit to be given Chase's testimony. The inquiry officer gave it full credit. Though this court might have taken a different view of the testimony had the matter been before it de novo, it cannot be said that Chase's testimony was so improbable as to be unworthy of belief. Under such circumstances, this court is obliged to accept the inquiry officer's findings.

Petitioner Acosta contends that error was committed in the exclusion of evidence concerning his counsel's conversation with a Mr. King. According to the offer of proof, King stated in this conversation that petitioner was not present at any meeting that King attended. This is directly contrary to the testimony of Salinas, who testified that all three (King, Salinas and petitioner) were present at a "unit" meeting. The offer

of proof further shows that King made the statement that if he testified at petitioner's hearing, his testimony would not hurt petitioner.

Respondent admits that hearsay evidence is admissible before administrative bodies. N. L. R. B. v. Cities Service Oil Co., 2 Cir., 1942, 129 F.2d 933, 936; Willapoint Oysters v. Ewing, 9 Cir., 1949, 174 F.2d 676. It is contended, however, that such tribunals are not compelled to accept all hearsay, especially where it has little or no probative value, citing the Cities Service Oil Co. case, supra.

 The statement by King that his testimony would not hurt Acosta was a conclusion which would not have been admissible even had King been testifying under oath. The effect and value of King's testimony, had he testified, would have been a matter for the determination of the inquiry officer, and King's opinion of its value was not admissible. On the other hand, King's alleged statement that he was not present at any meeting with Acosta is in direct conflict with the testimony of Salinas. This evidence had probative value and should have been admitted. Evidence might have less weight because it is hearsay, but as a necessary implication of the rule admitting it, the fact that it is hearsay will not make it weightless. How much weight such hearsay evidence was entitled to is problematical. On the whole I believe that, although the evidence should have been admitted, its exclusion was not so prejudicial as to constitute reversible error.

 With respect to the hearing officer's alleged partiality, the petitioner takes exception to his private consultation with the Government's counsel on whether to admit the hearsay evidence discussed above. It does not appear in the record that petitioner objected to this at the time of the hearing, although an objection was made on the appeal. Petitioner contends that this behavior on the part of the officer indicates a preexisting state of mind on his part against petitioner and in favor of the agency of which he was a part. Bias on the part of the officer is not shown by this single incident, and an examination of the record as a whole does not bear out the existence of bias. The private consultation was somewhat irregular, but it could hardly be classed as prejudicial error. See Bridges v. United States, supra, 199 F.2d at page 830; Donnelly Garment Co. v. N. L. R. B., 8 Cir., 151 F.2d 854, 870–873; N. L. R. B. v. Donnelly Garment Co., 330 U.S. 219, 236–237, 67 S.Ct. 756, 91 L.Ed. 854.

An application for suspension of deportation was made under the authority of 8 U.S.C.A. § 1254(a) (5), which provides the Attorney General may, in his discretion, suspend deportation of an alien who "has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; * * *; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child who is a citizen or an alien lawfully admitted for permanent residence."

The Attorney General's subordinates, acting on his behalf, denied the application for suspension of deportation as they thought Acosta was "statutorily ineligible therefor" because (1) his deportation to Mexico would not result in exceptional and extremely unusual hardship as he "lives in close proximity to that country whence he could readily proceed to apply for an immigrant visa", and (2) "he has testified under oath in these proceedings that he is not and has never been a member of the Communist Party of the United States. That testimony has been established to be false. Accordingly, the record does not affirmatively establish that the respondent has not been a member of the Communist Party of the United States during the preceding ten years and he is, therefore, also statutorily ineligible for suspension of deportation on that basis."

It is difficult to understand how the inquiry officer could find that the deportation of this alien, who has lived in this country continuously since he was seven years of age, would not result in exceptional and extremely unusual hardship. Not only was the evidence of such hardship overwhelming, but it was stipulated. At the hearing the inquiry officer invited a stipulation[1] and counsel for the Government stipulated that deportation "would break up this family which has its roots and heritage in this country and that these girls here do not speak, understand or read or write the Spanish or Mexican language * * * (the girls) are students * * * in the grammar and junior high school; that they plan on attending college—universities—that Mr. Acosta could not live in Mexico and support these people in the United States on account of the differential economically speaking in the currencies and otherwise in jobs".

■■■■ Where a deportee has applied for suspension of deportation, a federal regulation, 8 CFR § 242.61, having the force and effect of law, 8 U.S.C.A. § 1103(a), puts a duty on the inquiry officer of discussing the evidence relating to the deportee's eligibility for such relief and the reasons for granting or denying such application. In this instance the only reason given for finding contrary to the conceded facts was that Mexico is in close proximity to this country and it would be convenient to apply for an immigrant visa. The fallacy of this reasoning is that it deprives the alien of the benefit of a statute which is designed to *suspend deportation,* not to facilitate re-entry following deportation. It should also be noted that under 8 U.S.C.A. § 1182(a) (28), aliens who have been members of the Communist Party are ineligible to receive visas. If Acosta is deported, it means banishment for life from the country wherein he has resided for forty years; it means he must leave his family behind him or they must forsake their native land to live in a strange country where they will be unfamiliar with the language and ways of the people.

As far as Acosta is concerned, it might be said that the terrific price for his stupid indiscretion seventeen years ago is justified, but it is cruel punishment for this innocent family. Surely it was just such a situation that Congress had in mind when it enacted the statutory provisions for suspension of deportation.

With respect to the conclusion that "the record does not affirmatively establish that the respondent has not been a member of the Communist Party of the United States during the preceding ten years and he is, therefore, also statutorily ineligible for suspension of deportation on that basis," it should be noted that Section 1254(a) (5) does not say an applicant for suspension of deportation must affirmatively show that he has not been a member of the Communist Party for the preceding ten years. It does, however, say the applicant must prove that he is and has been for the preceding ten years a person of good moral character. Even if it be said that a member of the Communist Party is per se a person of bad moral character, the hearing officer's own findings establish that petitioner's membership in the Communist Party terminated "about November, 1937 or sometime in 1938", which was fifteen years preceding the date of the hearing. The record is replete with evidence of petitioner's good moral character during the prescribed period, none of which was refuted at the hearing. There is no evidence or even suggestion that he ever re-joined the Communist Party, committed any crime or performed any act indicating his moral character was other than good.

The Board of Immigration Appeals stated in its decision:

"* * * but there is an additional and determining factor in this case which militates against the favorable exercise of discretionary relief here.

"The respondent testified under oath in these proceedings that he is not and

---

1. Transcript pp. 12, 14.

never has been a member of the Communist Party of the United States. We, however, have accepted the testimony of the Government witnesses to the contrary and found that he was such a member. That is, we have found his testimony to be discredited. Under such circumstances we do not feel that favorable exercise of the Attorney General's discretion to suspend deportation is merited."

 In other words, according to the Board, whenever an alien is found to be deportable, suspension of deportation should not be granted if at his hearing the alien gave testimony contrary to what the administrative officials found to be true. The reasoning apparently is that a witness whose testimony is not accepted by the trier of fact is a perjurer and not a person of good moral character. Such reasoning is not only legally invalid, but it is contrary to the basic sense of fairness upon which our legal system is founded.

The right of an alien to testify in his own behalf is a statutory one, 5 U.S.C.A. § 1005, and undoubtedly a constitutional one, Japanese Immigrant Case [Kaoru Yamataya v. Fisher] 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721. Section 1254 is designed to give relief to an alien who, after a fair trial, is found to be deportable. The right of an alien to testify in his own behalf is a necessary element of a fair trial, and he cannot be deprived of the benefit of the statute merely because the testimony he gave in his own behalf was contrary to that on which the finding of deportability was based. The vice of branding as perjurers witnesses whose testimony is not accepted by the trier of fact is emphasized in a close case such as this one where the findings on the facts could have gone either way.

The statutes, 8 U.S.C.A. § 1254, and the federal regulations, 8 CFR 242.54; 8 CFR 242.61, entitle a deportable alien who has made timely application for suspension of deportation to an exercise of the Attorney General's discretion on such application. Here Acosta was deprived of the exercise of the discretion because the Attorney General's subordinates erroneously thought he was "statutorily ineligible" for suspension of deportation.

The courts may not suspend the deportation of a deportable alien as that discretionary power is vested solely in the Attorney General, 8 U.S.C.A. § 1254. However, when the Attorney General is required as a condition precedent to an order of deportation to exercise his discretion with respect to the suspension of deportation, the validity of the order must rest upon the needed exercise of discretion. If it is lacking, the order is ineffective. Where the order is ineffective, the custody of the petitioner is unlawful, and the court must order his discharge. A formal order to that effect will be entered.