Evangelos ASIKESE a/k/a Evangelos
Asikis, Appellant,

v.

Herbert BROWNELL, Jr., Attorney General of the United States,
Appellee.

No. 12962.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 11, 1956.
Decided Feb. 2, 1956.

Mr. Joseph J. Lyman, Washington, D. C., for appellant.

Mr. John W. Kern, III, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Robert L. Toomey, Asst. U. S. Attys., were on the brief, for appellee. Mr. Milton Eisenberg, Asst. U. S. Atty., also entered an appearance for appellee.

Before PRETTYMAN, DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant (plaintiff) filed this action for declaratory judgment and review of a deportation order. The District Court granted appellee's (defendant's) motion for summary judgment; and this appeal followed.

Appellant is a married male alien, a native of Turkey and a citizen of Greece. He last entered the United States from the Virgin Islands in November 1942, as a seaman, being in possession of a temporary visa which expired shortly after he entered this country. He was never legally admitted to the United States for permanent residence but has been continuously in

the United States since 1942. Appellant has no close relatives or dependents in the United States. His parents are deceased and his wife, from whom he was separated for some years prior to his entry into the United States, resides in Greece, as does his adult daughter. Since entering the United States he has been the owner and operator of a luncheonette in Jersey City, New Jersey, which he bought at a price of $6,-000.00 and in which his equity is valued at about $4,500.00; his income therefrom is approximately $250.00 a month; and he has other assets consisting of $200.00 cash on hand and $150.00 in the bank.

On February 2, 1954, appellant was arrested and it was charged that he was not in possession of a valid immigration visa. He was given an administrative hearing, at which he submitted an application for suspension of deportation, under the provisions of Section 244(a) (1) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1254 (a) (1),[1] and, as an alternative, requested that he be permitted to voluntarily depart in lieu of deportation.

The Special Inquiry Officer conducting the administrative hearing found that appellant was a deportable alien, that he had resided in the United States from the date of his entry in 1942, that he was a person of good moral character for the past seven years and was now a person of such good moral character, and that he had been physically present in the United States continuously for more than seven years.

Appellant urged that he would suffer hardship if he were deported because he would lose his business, could not find work in Greece, and that he would go away penniless. The Special Inquiry Officer, however, refused to find "exceptional and unusual hardship" and concluded:

"The economic factor, however, is not the controlling factor in determining whether or not respondent's deportation would result in an exceptional and extremely unusual hardship to himself. The absence of additional equities militates against the grant of suspension of deportation. Under the circumstances it is felt that the maximum relief respondent can qualify for in this proceeding under existing law is the alternative relief of voluntary departure in lieu of deportation."

Appeal was had to the Board of Immigration Appeals, which reviewed the Special Inquiry Officer's decision and ruled as follows:

"We have considered the foregoing and other factors relating to the application for discretionary relief. As a matter of administrative discretion we do not feel that suspension of deportation is warranted. We therefore concur in the disposition reached herein."

The instant action was then filed and, on motion for summary judgment, the trial court concluded that as a matter of law appellant was deportable and

---

1. "As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who—

"(1) applies to the Attorney General within five years after the effective date of this chapter for suspension of deportation; last entered the United States more than two years prior to June 27, 1952; is deportable under any law of the United States and is not a member of a class of aliens whose deportation could not have been suspended by reason of section 19(d) of the Immigration Act of 1917, as amended; and has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent or child, who is a citizen or an alien lawfully admitted for permanent residence * * *."

that denial of appellant's application for suspension of deportation was made in the proper exercise of the administrative discretion vested in the appellee. This appeal followed.

We are not able to say that the determination of the Attorney General as to lack of "exceptional and extremely unusual hardship" was improper. Further, appellant's application for suspension was denied as a result of the exercise of the discretion of the Attorney General, and we cannot say that the ruling constituted an abuse of discretion.

█ As a matter of fact, the legislative history indicates that when the term "exceptional and extremely unusual hardship" was used it was meant to apply to those cases of limited category in which the deportation of the alien "would be unconscionable." [2]

█ Undoubtedly, some hardship will result because of appellant's deportation but we do not believe that the showing made in this case was sufficient to lead us to conclude that the finding on the hardship question was erroneous or that there was abuse of discretion on the part of the Attorney General in refusing suspension of deportation. It is very likely that opportunity will be given appellant to depart voluntarily and

that a sufficient time will be given him for that purpose and to enable him to dispose of his business without too great a sacrifice.

The judgment of the District Court is Affirmed.

2. Senate Report No. 1137, 82d Cong., 2d Sess. (1952): "The term 'exceptional and extremely unusual hardship' requires some explanation. The committee is aware that in almost all cases of deportation, hardship and frequently unusual hardship is experienced by the alien or the members of his family who may be separated from the alien. The committee is aware, too, of the progressively increasing number of cases in which aliens are deliberately flouting our immigration laws by the processes of gaining admission into the United States illegally or ostensibly as nonimmigrants but with the intention of establishing themselves in a situation in which they may subsequently have access to some administrative remedy to adjust their status to that of permanent residence. This practice is grossly unfair to aliens who await their turn on the quota wait-

ing lists and who are deprived of their quota numbers in favor of aliens who indulge in the practice. This practice is threatening our entire immigration system and the incentive for the practice must be removed. Accordingly, under the bill, to justify the suspension of deportation the hardship must not only be unusual but must also be exceptionally and extremely unusual. The bill accordingly establishes a policy that the administrative remedy should be available only in the very limited category of cases in which the deportation of the alien would be unconscionable. Hardship or even unusual hardship to the alien or to his spouse, parent, or child is not sufficient to justify suspension of deportation. To continue in the pattern existing under the present law is to make a mockery of our immigration system."