**Dong Hyung LEE, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 75–2260.**

United States Court of Appeals,
Ninth Circuit.

March 24, 1977.

Jack T. Price, Los Angeles, Cal., for petitioner.

William D. Keller, U. S. Atty., Los Angeles, Cal., for respondent.

Before BARNES and GOODWIN, Circuit Judges, and TAKASUGI,* District Judge.

GOODWIN, Circuit Judge:

Dong Hyung Lee appeals an order of the Board of Immigration Appeals which denied relief from a deportation order.

Lee, a native of Korea, entered the United States in 1965 as a visitor. The follow-

ing year, he applied for permanent residence but his application was denied. In 1969, Lee was ordered to appear before a deportation hearing, but failed to do so. In 1971, Lee's wife entered the United States as a student, and in 1972 he again sought adjustment of his status. His request was again denied, and he was ordered deported. Lee did not seek voluntary departure, nor did he report for deportation. He appealed. In August 1973, Lee's wife gave birth to an American citizen. Lee bought a store and his income increased. In 1974, Lee applied for a suspension of deportation under Section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1), and sought to reopen his deportation proceedings. He relied upon the grounds that he had lived in this country for over seven years, was of good moral character, was the father of an American-born child, was the proprietor of his own business, and that deportation would create extreme hardship to his family.

In March 1975 Lee's motion to reopen deportation proceedings was denied. In April 1975, Lee filed another motion to reopen deportation, and in May 1975 this motion was denied. In June 1975, Lee filed this petition for review to this court under Section 106 of the Immigration and Nationality Act, 8 U.S.C. § 1105a.

This court's review is limited to the question whether the Board has abused its discretion. *Hun Chak Sun v. Immigration and Naturalization Service,* 415 F.2d 791 (9th Cir. 1969), *cert. denied,* 397 U.S. 908, 90 S.Ct. 905, 25 L.Ed.2d 89 (1970); *Loza-Bedoya v. Immigration and Naturalization Service,* 410 F.2d 343, 346 (9th Cir. 1969). *See also, Siu Fung Luk v. Rosenberg,* 409 F.2d 555 (9th Cir.), *cert. dismissed,* 396 U.S. 801, 89 S.Ct. 2151, 24 L.Ed.2d 58 (1969).

An alien illegally present in the United States cannot gain a favored status merely by the birth of his citizen child. *Gonzalez-Cuevas v. Immigration and Natu-*

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

*ralization Service,* 515 F.2d 1222, 1224 (5th Cir. 1975). The possibility of inconvenience to the citizen child is not a hardship of the degree contemplated by the statutory language of extreme hardship. *Mendez v. Major,* 340 F.2d 128 (8th Cir. 1965). In view of the relative ease with which aliens can enter this country as students or visitors and then delay their departure long enough to produce citizen children, the proposition urged by this petitioner would virtually do away with the limitations imposed by Congress upon immigration.

■ Here, the alien mother was brought into the country as a student some three years after Lee knew of his impending deportation. This does not appear to be the kind of fact situation that should cause the Immigration Service to exercise its discretion in the manner demanded by the petitioner, much less one that requires us to treat the action as an abuse of discretion.

The case is not substantially improved by the claim of economic hardship. Financial loss is not synonymous with extreme hardship. *See Blanco-Dominquez v. Immigration and Naturalization Service,* 528 F.2d 382, 383 (9th Cir. 1975); *Nishikage v. Immigration and Naturalization Service,* 443 F.2d 904 (9th Cir. 1971); *Llacer v. Immigration and Naturalization Service,* 388 F.2d 681 (9th Cir. 1968). Economic disadvantage has been consistently rejected by this court as a basis to compel a finding of extreme hardship. *Fong Choi Yu v. Immigration and Naturalization Service,* 439 F.2d 719 (9th Cir. 1971).

Virtually all of Lee's acquisitions of property and investment in his business enterprise occurred after he was under valid deportation orders. To reward him now would elevate thrift and industry above im-

migration policy, and would provide a blueprint for any like-minded alien to enter the country as a visitor and stay indefinitely. Such a result would also be an affront to those overseas aliens who are abiding by the law and waiting with whatever patience they can muster for an opportunity to enter legally as a permanent resident. We find no abuse of discretion.

The order of the Board is affirmed.

TAKASUGI, District Judge, dissenting:

I respectfully dissent.

Petitioner seeks review of an order of the Board of Immigration Appeals (herein "Board") denying his motion to reopen deportation proceedings. Said motion was filed for the specific purpose of securing an adjustment of his status for permanent residence under 8 U.S.C. § 1254(a)(1).[1]

The pertinent provisions of section 1254(a)(1) deal with the issue of whether the deportation of petitioner would result in *extreme hardship* to him, to his wife or to his child, a citizen of the United States.

The Board determined that petitioner's motion to reopen proceedings rested solely upon the facts that he has met the seven years physical presence requirement and is the father of a United States Citizen.

### Standard for Review

In deciding any cases under 8 U.S.C. § 1254(a)(1), the Board is required to make two separate and distinct determinations. Initially, it must decide petitioner's *eligibility* under the criteria of § 1254(a)(1). Once decided in the affirmative, the Board is then called upon to exercise its discretion as to whether such petitioner is *entitled to relief. Gordon and Rosenfield,* § 8.14, pp. 8–94 and 95. The Supreme Court noted in

---

1. Section 1254 provides, *inter alia,* as follows:

"(a) . . . the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension and deportation and—

"(1) . . . has been physically present in the United States for a continuous period of not less than seven years . . . and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence; . . . ."

*Foti v. Immigration and Naturalization Service,* 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281,

"In the instant case the special inquiry officer not only found that petitioner failed to meet the eligibility requirements for suspension of deportation, since no hardship would result from his deportation, but further indicated that, even had the hardship requirement been met, relief would have been denied as a discretionary matter. Since a special inquiry officer cannot exercise his discretion to suspend deportation until he finds the alien statutorily eligible for suspension, a finding of eligibility and an exercise of (or refusal to exercise) discretion may properly be considered as distinct and separate matters." 375 U.S. at 228–229, n. 15, 84 S.Ct. at 313–314, 11 L.Ed.2d at 290.

In reviewing motions to reopen, many cases have held that the appellate court is limited to determining whether the Board abused its discretion. *Santiago v. Immigration and Naturalization Service,* 526 F.2d 488, 489, n. 3 (9th Cir. 1975); *Loza-Bedoya v. Immigration and Naturalization Service,* 410 F.2d 343, 346 (9th Cir. 1969). This standard is correct for the Board's ultimate discretionary decision. However, the standard in reviewing the initial issue of eligibility appears to be the substantial evidence test (8 U.S.C. § 1105a(4)) as noted in *Foti, supra,* 375 U.S. at 228, 84 S.Ct. 306.

## Facts

In May, 1965, petitioner, a native of Korea, was admitted to the United States as a professional musician under Sec. 101(a)(15)(H)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i). In 1966 his application for permanent resident status was denied. In 1969 he was summoned to a deportation hearing for having remained longer than permitted. Petitioner failed to appear. For a year and eight months after his entry he played with a musical troupe and performed various and sundry jobs. Next, he was employed as a teacher at the University of Washington and then as a glass worker, stacking and checking bottles. On June 29, 1971, his spouse entered the United States as a student. In that year, he purchased the first of two wig stores. One such store was burned in a fire and the other was damaged during the rioting in East Los Angeles. Thereafter, petitioner obtained employment as a retail clerk at a "7–11" Store for $800.00 per month.

In 1972 he again sought adjustment of his status. A hearing was held and petitioner was found to be deportable and deportation was ordered. Petitioner appealed to the Board of Immigration Appeals. The appeal was denied by the Board.

In August, 1973, a child was born to petitioner and his spouse. This birth occurred after the original deportation order.

Ultimately, petitioner purchased a "7–11" Store in Montebello, California. Between February and September, 1974, petitioner averaged earnings of some $3,000 monthly and had gross earnings of some $215,000 for that year.

In September, 1974, petitioner applied for a suspension of deportation under Section 244(a)(1) Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1), and sought to reopen his deportation proceedings on the grounds he had lived in this country for over seven years, was of good moral character, was the father of an American-born child, was a proprietor of his own business and that deportation would create *extreme hardship* to his family. In March, 1975, petitioner's motion to reopen deportation proceedings was denied on the basis that the petitioner did not establish a *prima facie* case. In April, 1975, another motion to reopen deportation was filed with respondent. In May, 1976, said motion was denied. In June, 1975, petitioner filed the instant petition for review to this court under Section 106 of the Immigration and Nationality Act, 8 U.S.C. § 1105a to reopen proceedings.

## Discussion

In *Yong v. Immigration and Naturalization Service,* 459 F.2d 1004 (9th Cir. 1972) the court reversed an order denying petitioner's application for suspension of depor-

tation pursuant to 8 U.S.C. § 1254 on the grounds that the determination by the inquiry officer of the bases for the petition was in error. The officer had determined that the sole basis of petitioner's hardship was economic when in fact said petition alleged spousal separation as an additional factor of hardship.

In the instant case, the Board made a determination that the sole basis for this petitioner's motion was that he had met the seven years physical presence requirement and is the father of a United States citizen. However, from the record, it becomes obvious that the appeal was based on substantially more. Additional issues were presented relative to severe financial repercussions, family separations and the difficulty in obtaining visas. In essence, the determined bases by the Board did not conform to the claimed basis of petitioner.

In viewing the majority opinion, it appears that the only reading which would be compatible with *Yong* is to recognize the Board's error in not considering the entire bases raised by the petition in this case but finding that the omission of the other bases was harmless or insignificant under section 1254(a)(1).

The minority feels that the Board's ruling in denying petitioner's motion to reopen was not supported by "substantial evidence", at least under the "totality of the circumstances" theory, if not under the single criteria approach utilized by the majority.

A review of each claimed basis followed by a discussion of the "totality of the circumstances" will be helpful.

### Parentage and Family Separation

Concededly, there are ample cases in other circuits which state that an alien illegally present in the United States cannot gain a favored status occasioned merely by birth of his citizen child. *Gonzalez-Cuevas v. Immigration and Naturalization Service,* 515 F.2d 1222 (5th Cir. 1975); see *Mendez v. Major,* 340 F.2d 128 (8th Cir. 1965). To the extent that such decisions hold that parentage of a United States Citizen is not a

factor to consider, I strongly disagree. Section 1254(a)(1) expressly provides that consideration of extreme hardship should be applied ". . . to the *alien* or to his *spouse,* parent or *child,* who is a citizen of United States . . .." (Emphasis added). The American citizen child has an absolute right to remain in this country. This right, because of his tender age, cannot be exercised meaningfully without allowing his parents to remain here as well. In essence, the Board's decision thrusts an extremely difficult choice upon the child's parents if deportation is expected—a choice between the child's greater potential for health and general material welfare in the United States and the parental sustenance and guidance he would receive from his parents in Korea.

In *U. S. ex rel. Partheniades v. Shaughnessy,* 146 F.Supp. 772 (S.D.N.Y.1956), a refusal of the Board to consider the superior quality of education available in the United States as compared to those offered in Greek schools, coupled with the other factors, were sufficient to forestall deportation of the child's parents. The Board was also reversed in *Yong, supra,* where the deportation of an illegal alien wife from her husband, lawfully in the United States, was imminent. The separation of parents from their child as in the case at bar is no less painful or inconsequential. See also, *Acosta v. Landon,* 125 F.Supp. 434 (S.D.Cal. 1954).

### Economic Hardship and Availability of Visa

Prior to the 1962 Amendment to § 1254(a)(1), the standard for granting a discretionary stay of deportation was ". . . exceptional and extremely unusual hardship. . . ." Under this guide the District of Columbia Circuit in *Asikese v. Brownell,* 97 U.S.App.D.C. 221, 230 F.2d 34 (1956) held that the fact an illegal alien was forced to sell his luncheonette was insufficient to warrant a stay from deportation.

*Llacer v. Immigration and Naturalization Service,* 388 F.2d 681 (9th Cir. 1968), the first case to interpret § 1254(a)(1) in its

present form, is generally and freely cited as standing for the proposition that economic hardship *per se* falls short of the *extreme hardship* standard. A reading of *Llacer* reveals that its holding merely states that *extreme hardship* is not ". . . only the usual difference in economic standards of living which exist between the United States and other countries abroad. . . ." *Id.,* at 681. The court in *Llacer* was merely discussing economic disadvantage rather than economic hardship.

In *Kasravi v. Immigration and Naturalization Service,* 400 F.2d 675 (9th Cir. 1968) the court held that the unavailability of employment in one's chosen occupation upon return to one's native country was insufficient to constitute *extreme hardship.* I believe the *Kasravi* decision was dealing more with economic disadvantage than economic hardship. *Fong Choi Yu v. Immigration and Naturalization Service,* 439 F.2d 719 (9th Cir. 1971); *Nishikage v. Immigration and Naturalization Service,* 443 F.2d 904 (9th Cir. 1971); and *Blanco-Dominguez v. Immigration and Naturalization Service,* 528 F.2d 382, 383 (9th Cir. 1975) cite *Llacer* and each other without a recitation of specific facts which could lead the reader to a conclusion of whether there was economic hardship. *Pelaez v. Immigration and Naturalization Service,* 513 F.2d 303 (5th Cir. 1975) held that difficulty in finding employment and having to return to a country of a lower standard of living was not *extreme hardship.* Again, the decision is viewed to mean relative economic disadvantage as opposed to economic hardship. Consistent with the cases heretofore cited, economic disadvantage, absent any other factors, would fall short of the *extreme hardship* standard. In dealing with economic hardship *per se* a determination should be made on a case by case basis.

The case at bar potentially presents something quite beyond these modest economic inconveniences and merits at least a hearing. A review of petitioner's history since his entry should convincingly establish the vast distinction. The hardship petitioner will experience if deported is much greater than the mere reduction of the standard of living attendant upon returning to his native country in *Llacer, supra,* the sale of a luncheonette in *Asikese, supra,* or the exclusion from one's chosen profession in *Kasravi, supra.* Once petitioner is forced to leave the United States, his opportunity to secure a visa will also be severely curtailed since non-preference visa numbers are oversubscribed for Korea. See U.S. State Dept., "Availability of Immigrant Visa Numbers for March, 1976"; *Matter of H——*, 5 I & N Dec. 416–418; *Matter of Z——*, 5 & N Dec. 419–420. Petitioner's present circumstances cannot be divorced from the history of his efforts to attain his current status. Ten years of labor advancing himself from a wandering minstrel to a successful independent proprietor will perish instantaneously upon his deportation. To say that these circumstances, coupled with the separation from his three year old son, do not reach the threshold of *extreme hardship* is to blind oneself to the reality of human aspiration and to take refuge in verbal illusions. I do not reach the ultimate question of whether petitioner's deportation should be permanently stayed. However, I hold that petitioner had established an overwhelming showing of *extreme hardship.*

We must take hold of the fact that "extreme hardship" is a standard of degrees which range from mild to extreme. A single basis which may not in and of itself seek equation with the standard of "extreme hardship" can have greater relative weight in the scale of hardships when coupled with other factors which by themselves may also not reach the requisite threshold.

We are called upon to decide the petition of an entire individual. To seek out a claimed basis, analyze same in isolation from the other bases, and reach a conclusion is not, in my opinion, an analysis of the entire individual nor a fair assessment of the circumstances surrounding such an individual.

The case should be ordered remanded for hearing before the Immigration Law Judge consistent with the views expressed herein.