**HEE YUNG AHN and Kyung Hee Ahn,
Petitioners-Appellants,**

v.

**IMMIGRATION & NATURALIZATION
SERVICE, Respondent-Appellee.**

No. 79-7062.

United States Court of Appeals,
Ninth Circuit.

Submitted June 4, 1981.

Decided July 14, 1981.

Rehearing Denied Sept. 30, 1981.

Steven D. Karp, Beverly Hills, Cal., for petitioners-appellants.

Dzintra J. Janavs, Los Angeles, Cal., for respondent-appellee.

Before TRASK and SNEED, Circuit Judges, and EAST,* District Judge.

SNEED, Circuit Judge:

The Ahns seek suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1), arguing that they will suffer extreme hardship if deported. An immigration judge and the Board of Immigration Appeals considered their claim and concluded that they had not shown extreme hardship. The Ahns petitioned this court for review of the Board's order under 8 U.S.C. § 1105a. We decline to disturb the order denying suspension of deportation.

Mr. and Mrs. Ahn entered the United States from Korea as non-immigrants in 1967 and 1965 respectively. They have two children, both of whom were born in the United States. The Immigration and Naturalization Service instituted deportation proceedings against them in 1974. The Ahns conceded deportability but applied for suspension of deportation. Under section 244(a)(1) the Attorney General may suspend deportation of an alien who has been in the

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

United States for seven years, is a person of good moral character, and shows that deportation would result in extreme hardship. Following a hearing, an immigration judge found that the Ahns had not established extreme hardship and the Board affirmed.

The Ahns' primary argument is that their son Shane's eye condition makes it extremely hard on them to return to Korea. The bulk of their oral presentation to the immigration judge and their briefs to the Board and this court were devoted to this argument. Their evidence consisted of a letter from a doctor stating that Shane is being treated for far-sightedness and a statement by Mr. Ahn that Shane's condition is worse in the summer. Mr. Ahn told the immigration judge that it would be an extreme hardship on Shane to move to Seoul because it is hotter in Seoul than in Los Angeles in the summer. The immigration judge suggested to Mr. Ahn that Shane's eye problems might be exacerbated by the extremely smoggy conditions typical of Los Angeles summers rather than by heat. He directed the Ahns' counsel to present some medical evidence that Shane's condition would be adversely affected by deportation. None was presented at a hearing five months later.

The Ahns also argued that Mr. Ahn's political activity as a college student would make it difficult for him to get a job in Korea. A few minutes of the oral presentation to the immigration judge were devoted to this issue. Mr. Ahn does not claim that he would suffer persecution, a ground for withholding deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h). He stated, rather, that a friend from his college days who was a member of his circle told him that he might have difficulty getting a job. In response to his attorney's questions, Mr. Ahn further stated that his friend had a job in Korea and that the government has not pressured his friend. Upon eliciting this testimony, Mr. Ahn's attorney dropped this line of questions.

The Board reconsidered these arguments, as well as the Ahns' claim that forcing them to leave this country would cause them to suffer extreme hardship because they are now accustomed to American ways of life. In its summary paragraph the Board concluded:

> Our review of the record leads us to conclude that the respondents have failed to demonstrate that "extreme hardship" will be incurred by them or their children if deported to Korea. The respondents are in their forties and in apparent good health. The prospect of "cultural shock," a lower standard of living, and diminished job opportunities are faced by nearly every alien who is forced to leave the United States. This type of detriment *alone* does not amount to "extreme hardship." See *Kasravi v. INS*, 400 F.2d 675 (9 Cir. 1968). The uprooting of their citizen children and the probable liquidation of their real estate holdings are additional factors to be considered but they are not conclusive. See *Lee v. INS*, 550 F.2d 554 (9 Cir. 1977). Finally, the evidence thus far presented concerning the son's eye ailment does not convince us that he will experience the degree of medical hardship that would warrant suspending deportation of his parents. (emphasis added)

The Board has broad discretion in determining what constitutes extreme hardship. In *INS v. Wang*, —— U.S. ——, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981), the Supreme Court summarily reversed an en banc decision of this court because we substituted our opinion of what constitutes extreme hardship for that of the Board. The Court stated:

> [T]he Court of Appeals improvidently encroached on the authority which the Act confers on the Attorney General and his delegates. The crucial question in this case is what constitutes "extreme hardship." These words are not self-explanatory, and reasonable men could easily differ as to their construction. But the Act commits their definition in the first instance to the Attorney General and his delegates, and their construction and application of this standard should not be overturned by a reviewing court simply

because it may prefer another interpretation of the statute.

101 S.Ct. at 1031. The Court went on to note that: "The Attorney General and his delegates have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so. Such a narrow interpretation is consistent with the 'extreme hardship' language, which itself indicates the exceptional nature of the suspension remedy." *Id.*

■ The petitioners claim that the Board made three different errors. They style their claims as arguments that the Board committed procedural errors in an attempt to evade *Wang*.[1] First, the petitioners claim that the Board failed to consider their long duration in this country, 11½ and 13 years. However, the Board in its decision, issued in 1978, noted that Mrs. Ahn was first admitted in 1965 and Mr. Ahn was first admitted in 1967. The extreme hardship issue cannot arise under section 244(a)(1) unless the deportable alien has been in the country for at least seven years. It is not clear why the additional time these petitioners have spent in this country should be entitled to any weight. While unhelpful to the Ahns, it is relevant to note that much of the additional time has been spent avoiding deportation. Mr. Ahn had only been in this country for eight years when the Immigration and Naturalization Service began their investigation in 1975. And, as the report of that investigation and the immigration judge both concluded, the Ahns had managed to stay that long only because they had deceived the Service.

Second, the petitioners pluck the word "alone" from the conclusion of the Board, printed above, and state that the Board erred by failing to consider the factors cumulatively rather than in isolation. This is not how we read the paragraph. The Board first noted that the Ahns are in good health. It then noted that if deported they would face a lower standard of living, a common situation that "alone" does not constitute extreme hardship. It then considered "additional factors," uprooting the children and liquidating their property. Finally, it noted that the evidence concerning Shane's eye condition was deficient. The language used admittedly does not show that the Board added these factors together rather than considering them separately, although it may be interpreted either way. The opinion read as a whole, however, makes clear that the Board found little substance to any of the arguments, considered separately or together. Sending the

---

1. A number of petitioners have convinced panels of this court to endorse similar arguments since *Wang* was decided on March 2, 1981. For example, in *Sida v. INS,* 648 F.2d 638 (9th Cir. 1981), the petitioners sought to reopen deportation proceedings because they claimed new evidence indicated that their son's health would be adversely affected by deportation. The court held that it was error for the Board to refuse to consider this second motion to reopen because the new evidence might establish extreme hardship. At 641. It reversed despite the finding of an immigration judge that the petitioners had not satisfied the seven years of continuous residency requirement of section 244(a)(1). At 639–640. Thus, even if the Board concludes on remand that the Sidas established extreme hardship, it would still lack discretion to suspend their deportation.

In *Santana-Figueroa v. INS,* 644 F.2d 1354 (9th Cir. 1981), the court reversed a Board decision ordering the deportation of a sympathetic alien. The court noted that the petitioner was a 70-year-old, responsible, law-abiding, tax-paying, church-going Mexican maintenance man who, despite being uneducated and unskilled, used his meager earnings to support both his family in Mexico and himself without public assistance. *Id.* at 1355. The Board erred, the court held, in characterizing the petitioner's claim as one of mere economic detriment when in fact he would be completely unable to find employment if deported. *Id.* at 1356. This distinction was termed qualitative. *Id.*

And in *Perez v. INS,* 643 F.2d 640 (9th Cir. 1981), the court reversed the Board's denial of a motion to reopen. Although the Board's regulations prohibit reopening unless the new facts on which the motion is based are supported by "affidavits or other evidentiary material," 8 C.F.R. § 3.8 (1979), the court disregarded the petitioners' "unfortunate" failure to support their petition and reversed because it found the Board's record deficient. 643 F.2d at 641.

Although *Sida, Santana-Figueroa,* and *Perez* indicate that this court will strain to find reasons to reverse the Board despite *Wang,* that is not the sort of precedent we are bound to follow.

case back for further proceedings is unnecessary. The Board would not change its mind. More delay and additional useless hearings would be the only result.

Third, the petitioners claim that the Board overruled *Matter of Kojoory*, 12 I&N Dec. 215 (1967), because it failed to consider Mr. Ahn's claims that his political acts will cause him hardship. This is simply wrong. The Board has consistently held that political claims must be considered under section 243(h) rather than section 244(a)(1). In *Kojoory*, in fact, the Board stated:

> Counsel asserts that even if the claim of physical persecution is not sufficient to justify a stay under section 243(h), it can be considered an aspect of hardship in the suspension application. We have ruled on a similar contention in *Matter of Liao*, Int. Dec. No. 1446, where the suspension and 243(h) stay applications depended upon many of the same facts. We stated in that case, "We are of the opinion that the political aspect of this case has no relation to a determination of 'extreme hardship' under section 244(a)(1)." Where a respondent cannot establish the necessary hardship for suspension, we do not believe that a claim of persecution should be used to make up the deficit.

12 I&N Dec. at 219–20. Furthermore, as the Supreme Court recently told us in *Wang*, the Board has broad discretion in defining extreme hardship. If it decides to define it narrowly so that political claims are considered under section 243(h) and not under section 244(a)(1), that is within its discretion.

We affirm the Board's decision.

EAST, Senior District Judge, dissenting:

I respectfully dissent from the majority's opinion. I do not believe the record indicates the Board properly considered the factors of hardship, nor do I read the Board's prior cases to exclude consideration of economic hardship. Finally, I believe the majority is unduly influenced by the wash of the wake of *Wang*.

The Board must *cumulatively consider* the factors of economic hardship presented by an alien. *See Villena v. INS*, 622 F.2d 1352, 1357 (9th Cir. 1980) (en banc); *Urbano de Malaluan v. INS*, 577 F.2d 589, 594 (9th Cir. 1978). My reading of the Board's concluding paragraph, quoted by the majority, *supra*, does not convince me that the Board considered the hardship factors together. The decision notes that certain detriment "alone" is insufficient, and other hardships are "additional factors to be considered" but not conclusive. This does not assure me that the Board properly reviewed the Ahns' petition, nor can it assure the Ahns that they received the treatment they were legally entitled to.

The Board also improperly excluded from its consideration potential economic detriment rooted in political sources. I agree with the majority that the fact of political persecution itself should be considered in an application under section 243(h) and not section 244(a)(1). However, the Board has considered politically based sources of economic hardship in considering section 244(a)(1) applications. *In re Kojoory*, 12 I&N Dec. 215, 217 (BIA 1967), the Board *considered* and rejected the applicant's claim that there would be limited economic opportunities due to political persecution before it went on to disallow persecution per se to supplement the insufficient hardship claims of the section 244(a)(1) application. To treat the Ahns' situation differently is an impermissible *sub silentio* reversal of its own precedent. 8 C.F.R. § 3.1(g) (1981). *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1402 (1957). To allow the Board to ignore the politically based economic hardship here is procedurally impermissible and pragmatically unfair to the Ahns.

Finally, I believe the majority embraces an over-restrictive reading of the Supreme Court's decision in *Wang*. As the majority rightly points out, that court disapproved what it perceived as the Court of Appeals substituting its judgment of extreme hardship for that of the Board, But to recognize and defer to the Board's discretion in its substantive judgments does not require this court to approve all aspects of the

Board's decisions. We still must assure ourselves, by de novo review, that the Board's decision was reached consistently with the Constitution and all applicable laws and regulations. To retreat from a careful consideration of the Board's procedures would be to retreat from our judicial responsibility to review. I do not read *Wang* to lighten this obligation. Moreover, we should not decline to remand in the face of procedural defects because we may speculate that the "Board would not change its mind." If the Board can be allowed to circumvent the established process at its discretion, the essence of its fairness has been lost. I believe the Board in this case has utilized improper procedures tainting its ultimate exercise of discretion. I would remand for further consideration consistent with the applicable statutes, regulations, and rulings of this court.