Vincent Sik-Hung CHAN and Pauline Poon-Kar Chan, Petitioners,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 78–2375.

United States Court of Appeals, Ninth Circuit.

Dec. 28, 1979.

Gordon G. Dale, Santa Ana, Cal., for petitioners.

Lauri S. Filppu, Washington, D.C., on brief; Margaret J. Perry, Washington, D.C., for respondent.

Before GOODWIN and TANG, Circuit Judges, and LYDICK,* District Judge.

TANG, Circuit Judge.

Vincent and Pauline Chan are husband and wife, natives of Hong Kong, and citizens of Great Britain. The Chans remained past the time authorized by their student visas, and after a hearing, were ordered deported. The Chans then applied for suspension of deportation, but this was denied.

The immigration judge concluded, and the Board of Immigration Appeals affirmed, that the Chans were ineligible for suspension of deportation because they had not established the seven years of continuous physical presence and the extreme hardship required by the statute. The Chans argue that their trips to Hong Kong

* Honorable Lawrence T. Lydick, United States District Judge for the District of Central California, sitting by designation.

during school vacations were not meaningfully interruptive of their ten-year presence in the United States, and that the loss of professional status, reputation and opportunity and the family hardship that they would suffer constitute more than merely economic hardship. We conclude that (1) the immigration judge's determination that the Chans' vacations broke the continuity of their ten-year stay in this country was based on an erroneous legal standard, and (2) the Board abused its discretion in not fully considering the personal and professional hardship to the Chans. We, therefore, vacate the Board's order and remand for further proceedings.

*Facts*

The Chans entered the United States in 1968 as non-immigrant students. They both attended the University of Wisconsin where Dr. Chan received his Ph.D. in electrical engineering, and Mrs. Chan received a degree in pharmacy. Dr. Chan has worked since 1975 as a Senior Scientist at General Atomic Company in La Jolla, California, researching new sources of energy. He has an approved labor certification, but has been unable to obtain permanent resident status because no visa has been available for Hong Kong, except for first and second preference.

Dr. Chan was authorized to remain in the United States until December 14, 1976. Prior to this date, he left the country for two trips during school vacations. His trip to Hong Kong lasted from June 2 to August 21, 1972, and his trip to Canada lasted from August 12 to August 18, 1974. He traveled with his Hong Kong passport.

Mrs. Chan was authorized to stay in the United States until November 17, 1974. She also traveled during her school vacations. From June 10 to September 15, 1970 and from June 25 to August 17, 1972, she was in Hong Kong. Additionally, from July 1 to August 22, 1973 she traveled to Austria to study German. She is currently employed as the chief pharmacist at Pomorado Hospital in San Diego County.

The Chans admit that, if deported, they will probably be able to find some employment in Hong Kong. Mrs. Chan testified that she would be able to pursue her career after some period of delay for training under Hong Kong requirements. It is highly unlikely, however, that Dr. Chan will be able to find employment in his specialized field of research. Dr. Chan has submitted letters from professors, his employers, and scientists describing the importance of his research into new sources of energy and his exceptional qualifications for fulfilling a need in our national energy program.

Mrs. Chan has two sisters living in the United States, one a citizen and the other a lawful permanent resident; her family in Hong Kong has applied to become permanent residents of this country. If Dr. Chan is deported to Hong Kong, it will be necessary for him to support his parents on a lower salary.

In April 1977, the INS instituted deportation proceedings against the Chans because they had stayed beyond the time authorized. The Chans admitted the allegations of fact and conceded deportability. They then applied for suspension of deportation and, in the alternative, voluntary departure.

The immigration judge concluded that the time and distances traveled outside the United States by the Chans broke the continuity of their physical presence in the United States sufficiently to preclude suspension of deportation. The immigration judge also found it "inconceivable that Vincent would not be able to obtain employment in his own field or in a related field" and concluded that the Chans had failed to establish extreme hardship because their arguments were essentially economic. The immigration judge denied suspension of deportation but granted voluntary departure.

The Board of Immigration Appeals upheld the immigration judge's findings and dismissed the appeal. The Chans petition for review of this decision.

*Analysis*

■ To be eligible for suspension of deportation, an alien must demonstrate: (1) continuous physical presence in the United States for the immediately preceding seven

years; (2) good moral character[1]; and (3) extreme hardship to himself or to his spouse, parent, or child who is an American citizen or a lawful permanent resident. 8 U.S.C. § 1254(a)(1). Furthermore, proof of eligibility for suspension of deportation does not compel granting the relief. *Fong Choi Yu v. INS*, 439 F.2d 719 (9th Cir. 1971). The decision of the Board of Immigration Appeals will be upheld unless there has been an abuse of discretion, *Davidson v. INS*, 558 F.2d 1361, 1362–3 (9th Cir. 1977), but the suspension of deportation statute, 8 U.S.C. § 1254, should be liberally construed because of its ameliorative purpose, *Wadman v. INS*, 329 F.2d 812, 817 (9th Cir. 1964).

## I

*Continuous Physical Presence*

The Chans argue that their vacations to Hong Kong, Canada and Austria were not "meaningfully interruptive" of their presence in the United States and, therefore, should not be considered as breaking the continuity of their ten-year stay in this country.

■ The distinction between defining a "break in the continuity of physical presence" under 8 U.S.C. § 1254 and defining an "entry" under § 101(a)(13) of the Immigration and Nationality Act is not significant, so a similar test applies. *Wadman v. INS*, 329 F.2d at 815. In defining "entry" under § 101(a)(13), the Supreme Court held that there must be an intent to depart in a manner regarded as meaningfully interruptive of an alien's permanent residence. *Rosenberg v. Fleuti*, 374 U.S. 449, 462, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). The relevant factors for the court to consider are: (1) the length of the absence; (2) the purpose of the visit; and (3) the necessity of travel documents.

■ The length of the absence is not absolutely determinative of whether the absence is meaningfully interruptive. *See Toon-Ming Wong v. INS*, 363 F.2d 234, 236 (9th Cir. 1966). For instance, an absence

for a few days, except for an unlawful purpose, generally is not meaningfully interruptive. *See, e. g. Cuevas-Cuevas v. INS*, 523 F.2d 883, 884 (9th Cir. 1975); *Maldonado-Sandoval v. INS*, 518 F.2d 278, 280–81 (9th Cir. 1975); *Zimmerman v. Lehmann*, 339 F.2d 943, 944 (7th Cir. 1965), *cert. denied*, 381 U.S. 925, 85 S.Ct. 1559, 14 L.Ed.2d 683 (1965). If an alien is absent for several weeks or more, however, the courts usually look more carefully at other factors such as purpose, intent to remain, distance traveled, voluntariness of trip, necessity of travel documents, the alien's knowledge of the consequences of the trip and how many members of the family were absent from this country. *Compare Mamanee v. INS*, 566 F.2d 1103, 1105 (9th Cir. 1977); *Munoz-Casarez v. INS*, 511 F.2d 947, 948 (9th Cir. 1975); *and Heitland v. INS*, 551 F.2d 495, 500–504 (2d Cir.), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977) *with Toon-Ming Wong v. INS*, 363 F.2d at 235–36 (9th Cir. 1966); *Itzcovitz v. Selective Service Local Board*, 447 F.2d 888, 891–94 (2d Cir. 1971).

In a recent case, this court addressed the issue whether an alien's absence from this country between school semesters to visit his sick mother was meaningfully interruptive of his seven years continuous presence required by 8 U.S.C. § 1254. *See Kamheangpatiyooth v. INS*, 597 F.2d 1253 (9th Cir. 1979). The court concluded that an absence is not meaningfully interruptive of the entire period of presence in the United States if the hardship of deportation would be equally severe if the absence had not occurred, and if no significant increase in the likelihood of deportation could reasonably have been expected to flow from the manner and circumstances surrounding the absence. *Id.* at 1257. In *Kamheangpatiyooth*, this court held that neither the length of the absence (30 days), nor the distance traveled (to Thailand) conclusively broke the requisite continuity of physical presence. *Id* at 1258. The court remanded the case because the immigration judge and the

---

1. The immigration judge found both the Chans to be of good moral character.

Board of Immigration Appeals had applied the "three-pronged *Fleuti* test" without analyzing the circumstances of the case in terms of the purposes underlying the continuity requirement.

This court, in *Kamheangpatiyooth*, stated:

" . . . It was Congress' judgment that presence of that length [seven years] was likely to give rise to a sufficient commitment to this society through establishment of roots and development of plans and expectations for the future to justify an examination by the Attorney General of the circumstances of the particular case to determine whether deportation would be unduly harsh. . . .
An alien who leaves the country briefly and for innocent reasons during the requisite seven years may be in no different position, realistically viewed, than an alien who has remained within the borders for an identical period."

*Kamheangpatiyooth* at 1256.

■ In this case, Dr. Chan's brief vacation to Canada and Mrs. Chan's trip to Austria to study German were clearly not meaningfully interruptive of their presence in the United States. As for their trips to Hong Kong, Dr. Chan's longest absence was 80 days; Mrs. Chan's was 95 days. The sole purpose of the trips was to visit family and friends. The trips were voluntary and the distance involved was great, but the trips were during school vacations, and the Chans expected to return within a definite period of time. They were traveling separately; thus, each left a spouse in the United States.

In addition, the Chans traveled with the Hong Kong passports that they already had; they did not need other travel documents. They had no reason to suspect that their status in this country would be altered in any way by the trips. Moreover, there is absolutely nothing that makes anything about these trips suspicious.

The immigration judge, in failing to apply the *Fleuti* standard in light of the Congressional purposes behind the suspension of deportation statute, abused his discretion.

## II

*Extreme Hardship*

■ The immigration judge found, and the Board affirmed, that the Chans had established that deportation would cause them some economic detriment, but that they would not suffer extreme hardship within the meaning of the suspension of deportation statute. It is true that economic hardship alone does not establish extreme hardship under the statute, but it may be considered in conjunction with other factors in determining eligibility for suspension of deportation. *Jong Shik Choe v. INS*, 597 F.2d 168, 170 (9th Cir. 1979). The Chans argue that the hardship they will suffer is not merely economic, but also professional and emotional.

The Chans admit that they will probably be able to find some employment in Hong Kong. Mrs. Chan will eventually be able to pursue her career there, and Dr. Chan will be able to find some employment, although not in his specialized field of research.[2] Furthermore, more than the change of jobs will face the Chans upon a move to Hong Kong. Deportation will result in more separation of Mrs. Chan from her family in the United States, and Dr. Chan's own care and support of his parents may be on a significantly lower level.

The Board failed to consider fully the personal hardship to the Chans because of the effect that deportation would have upon their professions and their families. We conclude that the Board abused its discretion by failing to consider all the facts.

---

2. Dr. Chan has submitted letters from professors, his employers and scientists describing the importance of his research to our national energy program. Although Dr. Chan's employer and our country are not members of the protected class under 8 U.S.C. § 1254(a)(1), and therefore the impact on either is not relevant to the issue of initial eligibility for suspension of deportation, these equities are relevant in determining whether or not to grant discretionary relief. *See In re Lum*, 11 I. & N. Dec. 295 (BIA 1965).

**656**

*Conclusion*

Since we have determined that the immigration judge and the Board based their determinations regarding continuous physical presence upon an erroneous legal standard, we remand to the agency for a new determination in light of our decision in *Kamheangpatiyooth*. We further remand for reconsideration of the extreme hardship issue in light of the personal and professional hardship which deportation would bring.

Vacated and remanded for further proceedings.