**Narciso Edgardo Inciong VILLENA, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 78–2954.

United States Court of Appeals, Ninth Circuit.

June 4, 1980.

Leslie J. Frank, Frank & Rappaport, Los Angeles, Cal., for petitioner.

Howard D. Gest, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

Before WRIGHT, CHOY, GOODWIN, WALLACE, SNEED, KENNEDY, ANDERSON, HUG, and TANG, Circuit Judges.*

CHOY, Circuit Judge:

Villena petitions for review of decisions of the Board of Immigration Appeals (the Board) dismissing his appeal and denying his motion to reopen his deportation proceedings. The appeal to the Board was from the order of the immigration judge denying Villena's application for suspension of deportation under § 244 of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1254. The motion to reopen was filed while that appeal was pending and was based upon new facts supporting his claim of eligibility for relief. The issue raised is whether the Board abused its discretion by concluding that neither (1) the facts alleged in the application nor (2) those alleged in the motion established the extreme hardship required by § 244 of the Act, 8 U.S.C. § 1254.[1]

We conclude that the Board did not abuse its discretion by denying the original application, but that the additional facts alleged in the motion to reopen entitled Villena to a hearing to determine whether he is eligible for and whether he merits the requested relief. Thus, we hold that the Board abused its discretion by denying Villena's motion to reopen his deportation proceedings, and we reverse and remand for proceedings consistent with this opinion.

---

* Judges Ely and Trask heard argument but subsequently took senior status. They did not participate in this decision. *See United States v. American-Foreign Steamship Corp.*, 363 U.S. 685, 691, 80 S.Ct. 1336, 1340, 4 L.Ed.2d 1491 (1960).

Chief Judge Browning did not participate in this decision.

1. Both this case and *Wang v. INS*, 9 Cir., 622 F.2d 1341, which we heard en banc together, present the question whether, on the particular facts of each, the Board abused its discretion by denying the petitioners' motions to reopen their respective deportation proceedings. The petitioners in both cases sought suspension of deportation under § 244 of the Act, 8 U.S.C. § 1254. See note 7 *infra*. In both cases the issue is whether the petitioners set forth a prima facie case of extreme hardship to themselves or to their spouse, parent, or child who was a United States citizen or a lawfully admitted permanent resident alien, so as to require a hearing on their applications.

Villena, however, also questions whether the Board abused its discretion by denying his original application for suspension of deportation. Given this fact and our holding in *Wang* that issues of extreme hardship must be decided on the particular facts of each case, we chose to consider the cases in separate opinions.

*Facts*

Narciso Edgardo Inciong Villena is a 36-year-old native and citizen of the Philippines who entered the United States on September 1, 1965, as a nonimmigrant student. He is married to a Philippine citizen who similarly is seeking to reopen her deportation proceedings to apply for suspension of deportation. They have two United States citizen children, one born in June 1974 and the other in January 1977.

After obtaining a master of science degree in chemistry from the University of Oklahoma and the necessary authorization from the Immigration and Naturalization Service (the INS), Villena accepted employment as a chemist with an American corporation.

Villena was authorized to stay in this country until May 21, 1968. On May 20, 1968 he filed a petition seeking preference classification based upon his occupation, pursuant to § 203(a)(3) of the Act, 8 U.S.C. § 1153(a)(3). It was not until almost four years later, in April 1972, that the INS informed Villena that it could not accept his petition because he had listed two occupations[2] and because "Assistant Packaging Technologist" (Villena's job title) was not listed in the Dictionary of Occupational Titles.

The INS then notified Villena that, in view of the fact that his petition had not been accepted, he was to leave the country by May 6, 1972. Villena testified that he sought advice from his attorney[3] with regard to both notices. Apparently no further action was taken either by Villena or by his attorney.

Subsequently Villena was ordered to appear before a special inquiry officer in December 1972, but on the advice of his attorney he did not appear.

At his deportation hearing in 1976 Villena admitted deportability but requested suspension of deportation. Villena submitted numerous affidavits to the immigration judge evidencing his good moral character and his contributions to the community as well as a letter from a clinical psychologist detailing the hardship that Villena's citizen child would suffer if Villena were deported. The immigration judge found Villena to be "a worthwhile individual," but nonetheless denied the application on the ground that Villena had failed to establish the requisite extreme hardship.[4]

Villena appealed the denial. While the appeal was pending before the Board, Villena moved to reopen his deportation proceedings, seeking suspension of deportation on the basis of five new facts discussed *infra*: (1) that his wife, who had by then accrued seven years of continuous presence in the United States, was applying to reopen her deportation proceedings to file for suspension of deportation; (2) that their second citizen child had been born; (3) that he and his wife had purchased a new home valued at $79,000; (4) that his brother had become a United States citizen; and (5) that his parents had become "legal residents of the United States" and were residing with Villena and his wife.

The Board dismissed Villena's appeal and denied the motion to reopen, concluding that the hardship claimed by Villena was not "the type of hardship contemplated by Congress" and that, considering the record as a whole, including the facts alleged in the motion to reopen, Villena had failed to meet his burden of proving eligibility for

---

**2.** On the application line labeled "Profession or Occupation" Villena wrote "Assistant Packaging Technologist (Chemist)."

**3.** The attorney who represented Villena in 1972 is not the attorney who represented him before this court.

**4.** The judge noted that even if Villena had been eligible for relief, he might have denied it on

the ground that Villena did not merit relief because of "the actions [Villena] took to remain in the United States for the requisite period of time." As discussed *infra*, we would disagree with that conclusion. However, because the Board did not address that ground we need not determine whether denying relief on that ground would be an abuse of discretion.

relief. Villena petitions this court for review of the Board's decisions.

### Denial of Suspension of Deportation

■ Section 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1), grants the Attorney General discretion to suspend an alien's deportation and to adjust his status to that of a lawfully admitted permanent resident if the alien is deportable, has been physically present in the United States for a continuous period of not less than the seven years immediately preceding his application, has been a person of good moral character during all of that period, and establishes that deportation would result in extreme hardship to himself, or to his spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. The alien has the burden of proving both that he is eligible for discretionary relief and that he merits the favorable exercise of the Attorney General's discretion. *Cf. Lee v. INS*, 541 F.2d 1383, 1386 (9th Cir. 1976) (adjustment of status).

■ Where the Board denies an application on the ground that the alien is ineligible for relief, we will overturn the decision only if the Board has abused its discretion, *see Banks v. INS*, 594 F.2d 760, 762 (9th Cir. 1979), or if the Board has failed to exercise its discretion, *Asimakopoulos v. INS*, 445 F.2d 1362, 1365 (9th Cir. 1971).

The immigration judge found that Villena was ineligible for suspension of deportation because he had failed to establish the requisite extreme hardship.[5] The Board agreed. Villena asserts that he demonstrated extreme hardship to himself and to his son who is a United States citizen. On the basis of the facts alleged in the original application we cannot hold that the immigration judge and the Board abused their discretion by denying Villena the relief that he requested.

■ "Extreme hardship" is not a fixed and inflexible term; a discretionary determination of extreme hardship must be based on the particular facts of each case. *Banks v. INS*, 594 F.2d at 762.

Villena submitted affidavits attesting to his contributions to the community in projects such as organizing discussions to encourage better communication between teenagers and their parents. He claimed that he had adopted an American lifestyle, becoming completely integrated into the American culture, and that, if deported, he would be separated from friends and family who live in this country. Further, he contended that he would be unable to obtain comparable employment in his profession because industry in the Philippines has not yet reached sophisticated levels of research.

■ The Board should consider Villena's contribution to his community in ruling on his application. *See Wang v. INS*, 622 F.2d at 1345 n. 2 (9th Cir. 1980) (en banc). We know that the success of the community projects in which Villena participates does not rise or fall depending on Villena's presence. Nonetheless, his involvement in such projects does support his allegation that he has become integrated into the American culture. Moreover, separation from a community of people that one has come to identify with and become involved in results in a greater loss than does separation from people with whom nothing is shared. Thus, although this fact alone would not establish Villena's claim of extreme hardship, it should be weighed with other factors supporting the claim.

■ Separation from family may establish extreme hardship. *See Urbano de Malaluan v. INS*, 577 F.2d 589, 593–94 (9th Cir. 1978); *Yong v. INS*, 459 F.2d 1004, 1005 (9th Cir. 1972). At the time of his application Villena had only one brother in the United States; most of his family was in the Philippines. Thus, deportation would have reunited him with his family, rather than separating him from it.

■ Villena's claim that he will be unable to find comparable employment as a

---

**5.** Villena's good moral character and 14-year presence in this country are not contested.

chemist in the Philippines has two dimensions: (1) that he will suffer economic hardship; and (2) that deportation will force him to forfeit his years of education, training, and research experience in chemistry.[6] We have stated that economic loss alone will not establish extreme hardship, *e. g., Nishikage v. INS*, 443 F.2d 904 (9th Cir. 1971); *Kasravi v. INS*, 400 F.2d 675, 676 (9th Cir. 1968), but economic hardship should be considered in conjunction with other factors supporting Villena's claim.

■ We believe that it may be a hardship for a person to be foreclosed from practicing his profession. However, we would distinguish between the inability to engage in a *particular* occupation and the inability to engage in *any* occupation as evidencing different degrees of hardship. *See Kasravi v. INS*, 400 F.2d at 676. Villena did not allege that he could not be a chemist or that he would be unable to obtain any job. Rather, he testified that he would be unable to do research at a sophisticated level. That may be a disadvantage to him, but alone it is not the extreme hardship contemplated by Congress in drafting the statute.

Villena also claimed that deportation would have a traumatic effect on his two-year-old son, and he submitted a letter from a clinical psychologist in support of his view.

■ Mere inconvenience to a citizen child is insufficient to constitute extreme hardship. *Banks v. INS*, 594 F.2d at 762. The alien must demonstrate that the alien's deportation actually would cause the citizen child to suffer extreme hardship.

The letter from the psychologist states, in part, that a child of two "could live as happily in the Phillipines [sic] as he could in the United States, after a transition period," and that the length of the transition period and the extent of any adverse effects on the child would depend upon the extent to which the parents were affected by the deportation.

Most people moving from one country to another undergo some sort of transition period, whether the move is voluntary or involuntary. Villena probably will not be deprived of employment; moreover, he is educated, intelligent, and fairly young. It does not appear likely that the deportation would have such a significant effect on Villena that his two-year-old citizen child would suffer extreme hardship.

■ Even though we might not have reached the same conclusion that the Board did, we cannot say that, either individually or combined, the effects of deportation on Villena and on his son constitute such extreme hardship that it was an abuse of discretion to deny suspension of deportation.

*Motion to Reopen*

■ In a motion to reopen an alien must allege new facts which, if proved, would establish eligibility for the requested relief and potentially affect the result of the proceedings.[7] *Wang v. INS*, 622 F.2d 1341 (9th Cir. 1980) (en banc); 8 C.F.R. §§ 3.2, 3.8 (1979). This court has jurisdiction to review the denial of a motion to

---

6. We recognize that many occupations have aspects that go beyond monetary considerations. *See Chan v. INS*, 610 F.2d 651, 655 (9th Cir. 1979).

7. In *Wang v. INS*, 622 F.2d 1341 (9th Cir. 1980) (en banc) and *Urbano de Malaluan v. INS*, 577 F.2d at 592–93, we stated that the new facts alleged in the moving papers must establish a prima facie case for eligibility. In both of these cases the motion to reopen was to allow the alien *to apply* for suspension of deportation. Here, Villena moved to reopen the proceedings *after* he had applied for the relief and while his

appeal from the denial of his application was pending. We have held that a motion to reopen subsequent to an application for adjustment of status is a new application for the purpose of establishing a priority date for visa availability. *Shon Ning Lee v. INS*, 576 F.2d 1380, 1381 (9th Cir. 1978). Nonetheless, we believe that here, because of the unusual timing of the motion in relation to the original application, the Board should have considered all of the facts alleged—both those in the motion and those in the original application—to determine whether a hearing was warranted.

reopen, *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), *rev'g* 308 F.2d 347 (9th Cir. 1962), but that review is limited to the question whether the Board abused its discretion, *Wang v. INS*, 622 F.2d 1341 (9th Cir. 1980) (en banc). It is an abuse of discretion for the Board to deny a motion to reopen where the alien has set forth a prima facie case of eligibility. *Id.*

■ In his motion to reopen Villena alleged five new facts supporting his claim of extreme hardship: (1) that his wife was applying to reopen her deportation proceedings to file for suspension of deportation; (2) that their second citizen child had been born; (3) that he and his wife had purchased a new home; (4) that his brother had become a United States citizen; and (5) that his parents had become "legal residents of the United States" and were residing with Villena and his wife. The allegation that his wife's motion to reopen was pending does not demonstrate extreme hardship to Villena.[8] Nor does she yet have the citizen or permanent-resident status that, under § 244, 8 U.S.C. § 1254, would compel the Board to consider hardship to her.

■ The mere fact that an alien's child has been born in the United States does not entitle the alien to any favored status in seeking discretionary relief from deportation. *E. g., Wang v. INS*, 622 F.2d 1341 (9th Cir. 1980) (en banc). However, as we have repeatedly stated, the Board must consider what effect the deportation will have on the citizen child and whether the child will suffer extreme hardship. Because the nature and extent of hardship to a citizen child is difficult to discern without a hearing, circumstances that suggest that the alien's deportation would cause extreme hardship to his child warrant a hearing.[9] *Wang v. INS*, 622 F.2d 1341 (9th Cir. 1980) (en banc).

■ Villena concedes that "the potential adverse effects of deportation on his two United States citizen children, ipso facto, [do not constitute] extreme hardship," but he argues that, when considered in conjunction with the other facts, they help to demonstrate a prima facie case. We are persuaded by this argument. The children were not yet of school age at the time of the motion. However, the psychologist concluded that Villena's child would suffer some ill effects from deportation. Moreover, deportation today would separate the children from their grandparents and other close relatives. Thus, these elements should be weighed with the other factors tending to support Villena's claim of eligibility.

■ If deported, Villena might suffer some disadvantage from being forced to leave his recently-acquired home. Although this disadvantage alone does not satisfy the "extreme hardship" requirement, it too can and should be considered along with the other factors. *See Wang v. INS*, 622 F.2d 1341 (9th Cir. 1980) (en banc).

■ The allegation in Villena's affidavit, attached to his motion to reopen, that his parents are "legal residents of the United States" and reside with Villena and his wife, in and of itself, warrants a hearing on the issue of extreme hardship. In his brief Villena states that his parents are lawfully admitted for permanent residence,[10] so they

8. If her application had been granted, the allegation would have a different effect. *Cf. Yong v. INS*, 459 F.2d 1004, 1005 (9th Cir. 1972) (threatened separation from spouse lawfully in U.S. on student visa).

9. Villena argues that his children "would, in essence, lose their birthright, as they would be de facto aliens in the United States should they later return." This argument is akin to the

argument that deportation of alien parents is de facto deportation of their citizen children. We have consistently rejected this argument. *E. g., Urbano de Malaluan v. INS*, 577 F.2d at 594.

10. It is difficult to discern whether "legal residents of the United States" is artful or inartful phraseology. The phrase is equally susceptible of two interpretations: (1) that they are lawful

are among those mentioned in § 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1), extreme hardship to whom would satisfy that requirement of the statute. The Board previously has been receptive to claims that aliens who are supporting parents who are lawful permanent resident aliens are eligible for discretionary relief. *E. g., In re Louie,* 10 I. & N. Dec. 223 (1963). The fact that Villena's parents are living with him suggests that they might be partially dependent upon him; a hearing would enable the Board to investigate more fully their relationship.

▮▮▮▮ Moreover, the allegation that his parents live with him suggests hardship both to Villena and to his citizen children because deportation will cause them to be separated from close relatives. Congress has expressed a concern for the problem of keeping families of United States citizens and immigrants united. *See INS v. Errico,* 385 U.S. 214, 220 n.9, 87 S.Ct. 473, 477, 17 L.Ed.2d 318 (1966) (citing H.R.Rep.No.1199, 85th Cong., 1st Sess. 7 (1957)). The separation of his family thus is a factor strongly militating against denial of Villena's motion. *See Urbano de Malaluan v. INS,* 577 F.2d at 593–94. The allegation that Villena's brother is a United States citizen increases the weight to be accorded this factor, even though siblings are not specifically mentioned in § 244, 8 U.S.C. § 1254.

▮▮▮▮ We recognize that most of the facts supporting Villena's claim of extreme hardship arose after Villena's legal status in this country had terminated. They are, therefore, entitled to less weight in determining whether he has established eligibility for relief than are factors arising when he was legally in this country. However, the aggregate effect of these factors, when considered with the obvious prejudice that Villena suffered because of the INS delay in

responding to his 1968 petition for preference classification, convinces us that he is entitled to a hearing on his motion to reopen.

▮▮▮▮ In denying Villena's application for suspension of deportation the Board noted that since 1972 Villena had made no attempt to qualify for an immigrant visa and the immigration judge commented that Villena did not contact the INS after the initial rejection of his petition. The facts, rather, suggest that the INS was at fault. Villena should not be penalized because of an unjustified INS delay in responding to his petition within a reasonable period of time, *see Sun Il Yoo v. INS,* 534 F.2d 1325, 1328 (9th Cir. 1976), or because of the INS's failure to effect his deportation, *see Urbano de Malaluan v. INS,* 577 F.2d at 591.

▮▮▮▮ We have held that the rule of estoppel may be invoked against the government in immigration cases where there is affirmative misconduct. *Oki v. INS,* 598 F.2d 1160, 1161–62 (9th Cir. 1979); *Santiago v. INS,* 526 F.2d 488, 491–93 (9th Cir. 1975) (en banc), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). We also have held that a one-year delay in recognizing the validity of a petition for preference classification, where the INS offered no explanation for the delay, was so oppressive as to constitute such affirmative misconduct. *Sun Il Yoo v. INS,* 534 F.2d at 1328.

> [D]eportation is a drastic measure that may inflict "the equivalent of banishment or exile," . . . and "result in the loss 'of all that makes life worth living.'" [Citations omitted.] When such serious injury may be caused by INS decisions, its officials must be held to the highest standards in the diligent performance of their duties.

*Id.* at 1329. Once an alien has supplied the INS with all of the relevant information,

---

permanent resident aliens; or (2) that they are legally temporary residents, *e. g.,* because they have valid visas. The record does not reveal whether Villena's parents were lawfully admit-

ted for permanent residence as of the date of the motion to reopen. Based upon the statement in the brief, we infer that they were.

the INS has a duty to accord him within a reasonable time the status to which he is entitled. *Id.* at 1328.

In May 1968 Villena petitioned for preference classification based upon his occupation. Had the INS acted within a reasonable period of time, as it is under a duty to do, a visa undoubtedly would have been available to him.[11] The INS did not respond to his petition until almost four years later, however. There is no apparent justification for this delay. Thus, we believe that the INS is estopped from claiming that Villena failed to adequately pursue his claim for preference classification.

Villena annually informed the INS of his address and filed state and federal tax returns as required by law. He testified that he asked an attorney to represent him regarding the refusal to accept his petition. There is no evidence that Villena's actions were motivated solely by an intent to delay his departure. Moreover, Villena asserts (for the first time on petition for review) that his employer sent a letter to the INS explaining that Villena's occupation was chemist although his job title was Assistant Packaging Technologist, but that he received no response.

An alien should not be faulted for acting in good faith. Although Villena should have been more aware of his attorney's inaction, we cannot say that he should, therefore, be precluded from obtaining discretionary relief. We believe that he acted reasonably, and we would weigh the prejudice that Villena suffered because of

the INS delay with the other factors that support his claim for suspension of deportation. In light of these equities we hold that the Board abused its discretion by denying Villena's motion to reopen.

*Conclusion*

The allegations of Villena's original application for suspension of deportation and the evidence adduced at the hearing did not so clearly establish his claim (that deportation would result in extreme hardship to himself and to his citizen child) that we can hold that the Board abused its discretion. Therefore, we affirm the Board's dismissal of Villena's appeal.

The new facts raised in his motion to reopen suggest hardship to Villena's parents, who, as aliens lawfully admitted for permanent residence, are among those persons mentioned in § 244, 8 U.S.C. § 1254, as well as a greater hardship both to Villena and to his citizen children than was originally alleged. The aggregate effect of these allegations plus the previous allegations of hardship and the prejudice suffered by Villena because of the INS's unexplained delay in responding to his preference classification petition establish a prima facie showing of extreme hardship. Thus, we reverse the decision of the Board denying the motion to reopen and remand for consideration of whether Villena is eligible for and whether he merits suspension of deportation.[12]

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

11. In its decision the Board notes that "a member of the professions or an alien with exceptional ability may qualify for either third or sixth preference classification, or both" and that "sixth preference visas are available to qualified aliens from the Philippines with priority dates of January 1, 1978, or earlier." The priority date generally is determined by the date a petition is filed, 8 C.F.R. § 204.1(c)(2) (1979); 1A C. Gordon & H. Rosenfield, Immigration Law and Procedure § 3.5b, at 3–21 (1977); here that would have been before January 1, 1978.

12. The fact that Villena has established a prima facie case necessitates that a hearing be held; it does not presuppose that relief will be granted. *Wang v. INS*, 622 F.2d at 1347 (9th Cir. 1980) (en banc). The Board must exercise its discretion to determine whether the facts proved at the hearing are sufficient to support Villena's claim of extreme hardship; if the Board finds that Villena is eligible for relief, it must then exercise its discretion to determine whether he merits the relief. Whatever the Board's decision on each of these issues, it must discuss the evidence and its reasons for reaching the result that it did. *Id.* at 1347.

GOODWIN, Circuit Judge, specially concurring.

I concur under the compulsion of the majority opinion in *Wang v. I&NS* decided this day, 9 Cir., 622 F.2d 1341. I believe that *Wang* marks an unwise change in the immigration law of the circuit. But that change has been made and the court is bound by it.

SNEED, Circuit Judge (with whom KENNEDY, Circuit Judge, concurs) (concurring in the result only and dissenting from the majority opinion in its entirety):

I would reverse and remand this case for the reasons set forth in my opinion in *Wang v. INS*, 9 Cir., 622 F.2d 1341.

WALLACE, Circuit Judge, dissenting:

The majority adopts a standard of review for denials of motions to reopen which substantially, and unwisely, restricts the discretion of the Immigration and Naturalization Service (INS) in deciding when to reopen a case. I concur in Judge Goodwin's dissent in *Wang v. INS*, 9 Cir., 622 F.2d 1341, *ante* 622 F.2d at 1351, and I agree with Judge Sneed's conclusion, in his dissent to that same opinion, that the discretion of the INS should be broad. I write separately to indicate my disagreement with the majority's holding that a prima facie showing of eligibility for discretionary relief is sufficient to require reopening.

Motions to reopen are created by regulation; they have no origin in statute. They permit the INS to take a fresh look at a case which it has previously decided, but in which significant developments have occurred since the case was last opened:

Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that the evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted . . . unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

8 C.F.R. § 3.2 (1980). By requiring material new developments in a case, this regulation, which stipulates when the INS cannot reopen rather than when it must reopen, suggests that reopening should occur when the old deportation order would be unfair in the light of new developments. Identification of such cases is not regulated; it is left to INS discretion. This circuit has repeatedly recognized the discretionary nature of INS rulings on motions to reopen. *Lee v. INS*, 550 F.2d 554, 555 (9th Cir. 1977); *Hun Chak Sun v. INS*, 415 F.2d 791, 792 (9th Cir. 1969), *cert. denied*, 397 U.S. 908, 90 S.Ct. 905, 25 L.Ed.2d 89 (1970); *Greene v. INS*, 313 F.2d 148, 151 (9th Cir.), *cert. denied*, 374 U.S. 828, 83 S.Ct. 1869, 10 L.Ed.2d 1052 (1963).

The majority opinion purports to recognize the discretionary nature of decisions to reopen. *See ante* 1357–1358. However, the majority holding states that INS discretion ends when prima facie extreme hardship has been alleged. Thus, the sole determination that the INS may now make in ruling upon a motion to reopen is whether prima facie eligibility has been alleged. Refusal to reopen and hold a full hearing in the face of such an allegation will, in the future, constitute an abuse of discretion.

If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive. Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case. It will also waste the time and efforts of immigration judges called upon to preside at hearings automatically required by the prima facie allegations. There can be no doubt that the majority opinion eliminates the INS discre-

tion anticipated by the regulations creating the motion to reopen.

By requiring, as a matter of law, that the INS reopen the case when an alien alleges prima facie extreme hardship, the majority disregards a workable rule that preserves INS discretion. Under this rule, which is mentioned by the majority but never applied, an alien moving to reopen his proceedings must not only establish prima facie eligibility for the discretionary relief that he or she will seek, but must also demonstrate that a reopening of the proceeding would likely produce a result different from that produced by the previous proceeding. *See Ballenilla-Gonzalez v. INS*, 546 F.2d 515, 520 (2d Cir. 1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 75 (1977); 1 C. Gordon & H. Rosenfield, Immigration Law & Procedure § 1.10g, at 1–82 (1979). This standard permits the INS to deny reopening when, because of circumstances such as the litigious nature of the alien or the fact that all hardship factors arose after he or she was under an order of deportation, it is obvious that discretionary relief will not be granted even though prima facie extreme hardship has been established. *See, e. g., In re Lam*, 14 I. & N. Dec. 98, 100 (1972). Such discretion is clearly foreclosed by the majority opinion.

The majority compounds its error by stating that the INS should consider not only the facts alleged in the current motion to reopen but also those alleged in previous motions. *See ante* at n. 7. Regulations state that motions to reopen exist to permit the INS to consider information that it has not previously considered. Specifically, 8 C.F.R. §§ 3.2, 103.5, and 242.22 (1980) state that motions to reopen must be based upon information arising subsequent to the INS' last consideration of the case. Thus, not only does the majority unduly restrict the discretion of the INS by requiring a reopening every time facts are alleged that amount to prima facie hardship, it also expands the factual basis that the INS must consider when looking for such hardship.

The majority's disregard of the necessarily discretionary nature of decisions to reopen will, as Judge Goodwin states, provide a blueprint for aliens wishing to prolong their illegal presence in this country. In my opinion, the majority holding "elevate[s] thrift [, fertility,] and industry above immigration policy," and is "an affront to those overseas aliens who are abiding by the law and waiting with whatever patience they can muster for an opportunity to enter legally as a permanent resident." *Lee v. INS, supra*, 550 F.2d at 556. I am not suggesting that we should be insensitive to the genuine hardships of aliens facing deportation. I am simply suggesting that the government agency responsible for maintaining order in the immigration process should have the discretion to deny a formal hearing to those individuals who prolong their unlawful presence in this country more on the basis of legal maneuvering than on the basis of genuine need. Therefore, I respectfully dissent.