**Marcos BARRERA–LEYVA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 79–7391.**

United States Court of Appeals,
Ninth Circuit.

Submitted May 6, 1980.

Decided Sept. 15, 1980.

Frank S. Pestana, Los Angeles, Cal., on briefs, for petitioner.

Andrea Sheridan Ordin, Los Angeles, Cal., on briefs, for respondent.

Before ALARCON and NELSON, Circuit Judges and JAMESON,* District Judge.

JAMESON, Senior District Judge:

Marcos Barrera-Leyva seeks review, pursuant to 8 U.S.C. § 1105a, of an order of the Board of Immigration Appeals (Board) dismissing his appeal from a decision by an

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

immigration judge denying suspension of deportation under 8 U.S.C. § 1254(a)(1).[1]

## I. *Factual Background*

Petitioner, a native and citizen of Mexico, who is now 33 years old, entered the United States without inspection in March, 1969. He was in Mexico briefly in 1974, and has not been out of the United States since then. He lives in Oxnard, California with his wife[2] and seven children, five of whom were born in Mexico and two of whom are United States citizens. Petitioner's wife went to Mexico to give birth to each of the five older children. The children remained in Mexico until 1975, when they came to the United States. They are all now attending school in the United States. The two younger children were born in the United States on October 4, 1977, and September 15, 1978, respectively.

Petitioner has four sisters living in Chicago, and a brother in Farmersville, California. All are lawful permanent residents of the United States. Petitioner's parents, two other brothers, and two other sisters live in Mexico. His wife's entire family are lawful permanent residents, living in Oxnard.

Petitioner is the sole supporter of his wife and children. He earns about $250 per week as an agricultural worker. Before coming to the United States, petitioner worked in the fields in Mexico.

In May, 1978, nine years after petitioner came to the United States, deportation proceedings were initiated against him. At his deportation hearings, petitioner admitted deportability, but requested a suspension of deportation based on extreme hardship to himself and his citizen children, under 8 U.S.C. § 1254(a).

Petitioner argued that deportation would cause extreme hardship because of the high unemployment rate in Mexico, a much lower pay scale, lack of good food and health care, and because he would be unable to pay for his children's education. He also stated that the "main problem" is that the five older children do not want to go back to Mexico.

The immigration judge in an oral opinion found that petitioner met the seven years presence and good moral character requirements of the statute, but found him ineligible for relief because the nature of his hardship claim was primarily economic and thus insufficient to establish extreme hardship. The Board dismissed petitioner's appeal from this decision on the same grounds—that his claimed hardship was merely economic.

The sole question presented on this appeal is whether the Board abused its discretion in upholding the finding of the immigration judge that petitioner was ineligible for suspension of deportation because he had failed to establish extreme hardship. This court recently considered the extreme hardship provision of § 1254(a)(1) in two *en banc* cases, *Wang v. I&NS*, 622 F.2d 1341 (9 Cir. 1980), and *Villena v. I&NS*, 622 F.2d 1352 (9 Cir. 1980).[3] We shall consider petitioner's contentions in the light of these cases.

---

1. § 1254(a)(1) grants the Attorney General discretion to suspend an alien's deportation and adjust his status to that of a lawfully admitted permanent resident if the alien is deportable, has been in the United States continuously for seven years, is of good moral character, and "is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

2. Petitioner's wife is also an illegal alien, although the record does not reflect whether deportation proceedings have been commenced against her.

3. In *Wang* the court reviewed a denial by the Board of a motion to reopen deportation proceedings to consider a claim of extreme hardship. *Villena* involved both a motion to reopen and a direct appeal of a denial of suspension. Although the showing required on a motion to reopen (prima facie case) is less burdensome than that required to warrant reversal of a denial of suspension for abuse of discretion, the court's discussion of the factors that enter into the extreme hardship equation lends guidance in this case. See also *Urbano de Malaluan v. I&NS*, 577 F.2d 589 (9 Cir. 1978) (motion to reopen).

## II. *Scope of Review*

 The discretionary determination of extreme hardship is not bound by any fixed rules; rather, it depends upon the facts and circumstances of a particular case, *Banks v. I&NS*, 594 F.2d 760, 762 (9 Cir. 1979), and we cannot substitute our opinion for that of the Attorney General.[4] Although the Attorney General's discretion under § 1254(a)(1) is broad, the statute should be liberally construed to effectuate its ameliorative purpose. See *Wang, supra* at 1346; *Chan v. I&NS*, 610 F.2d 651, 654 (9 Cir. 1979). This court has held failure to consider all the factors that bear on hardship to be an abuse of discretion. *Chan, supra* at 655; *Wang, supra*, at 1346; see also *Villena, supra*, at 1357–61. We find that the immigration judge and the Board abused their discretion in failing to consider the non-economic factors that may help to establish extreme hardship on petitioner and his citizen children if petitioner is deported.

## III. *Extreme Hardship*

### A. *Factors to Consider*

 In *Wang, supra,* we noted that an alien need demonstrate extreme hardship to only one member of the class specified in the statute to establish eligibility for suspension of deportation. We also noted, however, that if extreme hardship to more than one of the class is alleged, the Board should consider the aggregate effect of deportation on all such persons. *Wang, supra* at 1347 and n. 6. In other words, even if the hardship to one person would not itself amount to extreme hardship, the Board should consider whether the aggregate effect on the protected class amounts to extreme hardship. See *id* at 1349.

 *Villena* reinforces this reading of *Wang.* In reviewing the Board's denial of Villena's application for suspension of deportation, the court examined each of Villena's claimed hardships, noting that although any one factor alone "would not establish Villena's claim of extreme hardship, [each] should be weighed with other factors supporting the claim." *Villena, supra* at 1357. Taken together, *Wang* and *Villena* suggest that the Board should consider the combined effect of individual hardship factors on individual members of the specified class and on the class as a whole, in determining whether petitioner has demonstrated extreme hardship.

This court has recognized in many cases that economic detriment alone does not establish extreme hardship, but is a factor to consider with others in determining eligibility for suspension of deportation. *Wang, supra* at 1348; *Villena, supra* at 1358; *Choe v. I&NS*, 597 F.2d 168, 170 (9 Cir. 1979); *Chan v. I&NS*, 610 F.2d 651, 655 (9 Cir. 1979); *Urbano de Malaluan v. I&NS*, 577 F.2d 589, 594 (9 Cir. 1978). In at least one case, however, we distinguished between inability to find comparable employment and inability to find *any* employment, suggesting that the inability to secure *any* employment constitutes more than mere economic detriment. *Kasravi v. I&NS, supra,* 400 F.2d at 676; see also *Villena, supra* at 1358. It is also true that other personal hardships may flow from inability to obtain any employment, such as inadequate health care and diminished education and general material welfare.

 Although some cases suggest otherwise,[5] in determining eligibility for suspension of deportation the Board can consider hardship only to members of the specified class. However, the existence of family or relatives outside the enumerated class

---

**4.** See *Kasravi v. I&NS*, 400 F.2d 675, 677 (9 Cir. 1968). There the court construed a different statute, 8 U.S.C. § 1253(h), with wording similar to § 1254(a)(1), vesting authority in the Attorney General to withhold deportation when *in his opinion* the alien would be persecuted if deported.

**5.** See, *e.g., Chan v. I&NS, supra.* There the court appeared to consider the hardship that would result to Chan's dependent parents who were citizens and residents of Hong Kong. We reject, however, any suggestion that hardship to persons other than the alien in question, or a spouse, parent, or child who is a United States citizen or lawful resident, should be recognized.

is not irrelevant to the hardship determination. Breakup of close family ties is an important factor pertinent to hardship on an alien and especially his children. *Villena, supra* at 1359; *Urbano de Malaluan, supra* at 593–94. See also *Chan, supra* at 655, *Yong v. I&NS*, 459 F.2d 1004, 1005 (9 Cir. 1972).

Another important factor to weigh in the hardship determination is the difficulty of adjusting to a new country. The age of any children involved is a relevant consideration, see *Choe v. I&NS*, 597 F.2d at 170, and the degree to which roots have been established in this country must also be considered. See *Urbano de Malaluan, supra* at 595; *Villena, supra* at 1357. Every alien who is deported will require some adjustment; whether adjustment affects the hardship determination depends upon the degree of adjustment that will be required. That is, the degree of adjustment necessary must be greater than that required of the ordinary alien who is deported. *Cf. Wang, supra* at 1346.

## B. *Hardship in this Case*

Petitioner contends that the immigration judge and the Board did not consider the hardship to himself and to his citizen children that would result from their separation from relatives residing in the United States. Petitioner has four sisters living in Chicago and a brother in Farmersville, California. The rest of his family, including his father, two brothers, and two sisters, live in Mexico. If these were the only family ties to consider, we would not be persuaded that petitioner had alleged sufficient facts to warrant consideration by the Board.

The Board should, however, have considered that petitioner's wife's family, a significant part of the family unit, reside in Oxnard, California. The Board's decision stated only that "[n]o evidence was submitted that the respondent's departure . . . would constitute a hardship to his lawful permanent resident siblings." The

immigration judge and the Board ignored the effect on petitioner and his two citizen children that would result from breaking up the family unit. Hardship to the young children especially is likely should they be separated from their maternal grandmother and her children. *Cf. Villena, supra* at 1359. Given that Congress has expressed concern for the problem of keeping families of United States citizens and immigrants united, family separation is "a factor strongly militating against denial" of petitioner's application. *Id.* at 1360. The fact that members of the family unit are not within the class specified in the statute does not affect the closeness of family ties. We are considering here the effect of separation on petitioner and his citizen children, not on the resident family members.

Petitioner next argues that the hardship his family will suffer due to inadequate health care, diminished educational opportunity, and lower general material welfare should have been considered by the Board. We are not faced here with a mere likelihood of a lower standard of living. The factors mentioned by petitioner are certainly related to economic hardship, but they involve elements of personal hardship as well, both to petitioner and his two citizen children. Here we are faced with the situation that *Kasravi* suggested may constitute extreme hardship. See *Kasravi*, 400 F.2d at 676. It is unlikely that petitioner will be able to obtain any employment to support his family.

The immigration judge held, and the Board agreed, that petitioner's "claim to hardship rests primarily on economic disadvantages and standards of living that exist between the United States and Mexico." The judge also remarked that differences in educational opportunities and living conditions are insufficient to establish extreme hardship, and that because the citizen children are infants, they could easily adjust outside the United States.[6] We agree that

---

6. Petitioner's implied argument regarding the difficulty of his own adjustment due to firmly established roots in the United States is unconvincing. He has worked in no fewer than four communities in nine years; his wife returned to Mexico for extended periods to bear their five

the young age of the children mitigates their adjustment difficulties, see *Villena, supra* at 1358.

██ However, these United States citizens · face certain economic and personal hardships for at least the foreseeable future. The aggregate effect of these hardships, as well as the adjustment due to separation from close relatives, may well constitute extreme hardship and should have been considered by the immigration judge and the Board. Economic hardship is a factor to consider along with other hardships. *Wang, supra; Villena, supra.* The hardship to the citizen children, who have every right to remain in the United States, seems especially severe given the likelihood that petitioner will never be allowed to immigrate to this country.[7]

This is not to say we should thwart immigration policy, or "affront . . . those overseas aliens who are abiding by the law and waiting with whatever patience they can muster for an opportunity to enter legally as a permanent resident." *Lee v. I&NS,* 550 F.2d 554 (9 Cir. 1977). Were we concerned only with petitioner here, Lee's reasoning would be compelling. It is less convincing when we consider that the two young children are United States citizens.

██ We do not suggest that an alien can gain favored status merely because he has a child who is a United States citizen. *Wang, supra* at 1348; *Choe v. I&NS,* 597 F.2d at 170. Nor are we dealing here with mere inconvenience to a citizen child. *Lee, supra* at 556. It is significant that petitioner's citizen children were born before deportation proceedings were commenced against petitioner. It cannot be said that petitioner had these children to avoid deportation. See *Wang, supra* at 1346; *Villena, supra* at 1360. We are not faced with the same situation confronting the court in *Lee.*[8]

██ In holding that the Board and the immigration judge abused their discretion, we do not presume to substitute our opinion for theirs. We merely find that due consideration was not accorded to many factors that, taken together, the Board or immigration judge may have found to constitute extreme hardship. Any decision made upon remand should contain a discussion of the evidence and the reasons for granting or denying petitioner's request for relief. Only then can we adequately review it. See *Wang, supra* at 1349.

Reversed and remanded for further proceedings consistent with this memorandum.

---

older children; the family speaks Spanish at home; and there is no evidence in the record of involvement in community affairs, see *Villena, supra* at 1357, or other evidence of integration into American culture.

**7.** Petitioner is in a non-preference category, and visa numbers are presently not available for Mexico.

**8.** Furthermore, the continued vitality of *Lee* is questionable. We overruled *Lee* insofar as it is inconsistent with our opinion in *Wang. Wang, supra* at 1349.