642 F.2d 1387
 207 U.S.App.D.C. 1, 1980-81 Trade Cases 63,777
 The COCA-COLA COMPANY, a corporation, et al., Petitioners
v.
FEDERAL TRADE COMMISSION, Respondent, Coca-Cola Bottlers'
Assoc., et al., Associated Coca-Cola Bottling Co., Inc.,
Coca-Cola Bottling Co. Consolidated, Coca-Cola Bottling Co.
of New York, Inc., Coatesville Coca-Cola Bottling Works,
Inc., Coca-Cola Bottling Midwest, Inc., Coca-Cola Bottling
Co. of Los Angeles, et al., Intervenors.
PEPSICO, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent, Pepsi-Cola Albany
Bottling Company, Inc., Pepsi-Cola Bottling
Company of Central Virginia, Pepsi-Cola
Bottling Company of Tampa, Inc.,
and
Pepsi-Cola Bottlers Association, Intervenors.
 Nos. 78-1364, 78-1544.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 25, 1978.
Decided Feb. 5, 1981.
 
 Milton Handler, New York City, for petitioner in No. 78-1544.
 Gordon B. Spivack, New York City, with whom Thomas D. Brislin and Jonathan M. Jacobson, New York City, were on the brief, for petitioners in No. 78-1364.
 Willis B. Snell, Michael L. Denger, Robert W. Clark, III, and Ronald M. Levin, Washington, D.C., were on the brief, for intervenor Coca-Cola Bottlers' Assn., et al., in No. 78-1364.
 Lawrence R. Levin, Chicago, Ill., with whom Wilson P. Funkhouser, Chicago, Ill., were on the pleadings for intervenor, Associated Coca-Cola Bottling Co., Inc., in No. 78-1364.
 Carleton A. Harkrader, Washington, D. C., with whom Thomas C. Matthews, Jr., Terrence Roche Murphy, Lewis M. Popper and Douglas Carnival, Washington, D. C., were on the brief, for intervenor, Coca-Cola Bottling of Los Angeles, et al., in No. 78-1364.
 Robert J. Sisk, New York City, for petitioner in No. 78-1545.
 David M. Fitzgerald, Atty., Federal Trade Commission, Washington, D. C., with whom Gerald P. Norton, Deputy General Counsel, Miriam A. Bender and Leslis R. Melman, Attys. Federal Trade Commission, Washington, D. C., were on the brief for the respondent.
 Also John P. Gaither, Chattanooga, Tenn., entered an appearance for intervenor, Coca-Cola Bottling Co., in No. 78-1364.
 Also Barlett H. McGuire, New York City, entered an appearance for intervenor Coca-Cola Bottling Co. of New York.
 Also Roger N. Nanovic, Jim Thorpe, Pa., entered appearances for intervenor, Coatesville Coca-Cola Bottling Works, Inc., in No. 78-1364.
 Also Douglas M. Carnival, Washington, D. C., entered an appearance for intervenor, Coca-Cola Bottling Midwest, Inc., in No. 78-1364.
 Before LEVENTHAL*, MacKINNON and ROBB, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioners The Coca-Cola Company ("Coke") and PepsiCo. Inc. ("Pepsi") manufacture soft drink concentrates and syrups. They supply these ingredients to bottlers whom they license, under various trademarks, to manufacture and distribute several flavored carbonated soft drink products. The trademark licenses grant to each bottler the exclusive right to manufacture, distribute, and sell the trademarked product within a geographic area defined by the contract, and limit the licensee to the sale of such products within the specified territory.
 
 
 2
 In 1971, the Federal Trade Commission ("FTC" and "Commission") issued administrative complaints against Coke and Pepsi and several other manufacturers of similar products, alleging that the territorial exclusivity provisions of the trademark licenses violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.[1] Following a six week hearing, which generated a record of over 4,000 pages of hearing transcript, 14 stipulations encompassing over 500 pages, and approximately 1,300 exhibits totalling thousands of pages, an Administrative Law Judge ("ALJ") issued an Initial Decision upholding the legality of the challenged restrictions in the trademark licenses and dismissing the complaints. The ALJ applied the "rule of reason" and found that although the provisions at issue restricted intrabrand competition among each petitioner's bottlers, they did not constitute unreasonable restraints on trade because, inter alia, they furthered petitioners' legitimate business goals, because each bottler faced substantial and effective interbrand competition in its territory, and because their adverse effect on intrabrand competition was outweighed by their beneficial effects on interbrand competition.
 
 
 3
 On appeal, the Commission, based upon its own de novo review of the record and an application of Continental T. V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), held, in a 2-1 decision, that the territorial exclusivity provisions did constitute unreasonable restraints on trade and unfair methods of competition in violation of Section 5 of the FTC Act. See Coca-Cola Co., 91 F.T.C. 517 (1978); PepsiCo. Inc., 91 F.T.C. 680 (1978). The FTC found, inter alia, that the provisions eliminated virtually all intrabrand competition, that the business reasons offered in support of the restraints did not justify this adverse effect on intrabrand competition, and that the provisions lessened interbrand competition. Although the Commission stated that the bottlers' territories were "not devoid" of interbrand competition, it did not attempt to evaluate, and made no detailed findings, concerning the nature or extent of the interbrand competition which it recognized to exist, and which it found the provision to impair. Petitioners then appealed to this court, arguing primarily that the Commission misapplied Sylvania and the Rule of Reason in determining that the territorial restrictions in the trademark license provisions were unlawful.
 
 
 4
 After oral argument and before an opinion issued[2], Congress in 1980 enacted the Soft Drink Interbrand Competition Act ("Soft Drink Act"), P.L. 96-308, 94 Stat. 939, "to clarify the circumstances under which territorial provisions in licenses to manufacture, distribute, and sell trademarked soft drink products are unlawful under the antitrust laws". S.Rep.No. 645, 96th Cong. 2d Sess. 1 (1980); H.Rep.No.1118, 96th Cong. 2d Sess. 1 (1980), U.S.Code Cong. & Admin.News 1980, p. 4391. This 1980 Soft Drink Act provides, inter alia:
 
 
 5
 Sec. 2. Nothing contained in any antitrust law shall render unlawful the inclusion and enforcement in any trademark licensing contract or agreement, pursuant to which the licensee engaged in the manufacture (including manufacture by a sublicensee, agent, or subcontractor), distribution, and sale of a trademarked soft drink product of provisions granting the licensee the sole and exclusive right to manufacture, distribute, and sell such product in a defined geographic area or limiting the licensee, directly or indirectly, to the manufacture, distribution, and sale of such product only for ultimate resale to consumers within a defined geographic area: Provided, That such product is in substantial and effective competition with other products of the same general class in the relevant market or markets. * * *
 
 
 6
 Sec. 5. As used in this Act, the term "antitrust law" means the Sherman Act (15 U.S.C. 1 et seq.), the Clayton Act (15 U.S.C. 12 et seq.), and the Federal Trade Commission Act (15 U.S.C. 41 et seq.).
 
 
 7
 (94 Stat. 939). (Emphasis added).
 
 
 8
 Following passage of the Act, we invited the parties to submit supplemental briefs concerning its effect upon this case. All parties agree that the new Act controls this appeal, and that the Commission's orders should be set aside and the complaints dismissed. They differ only as to the reasons why this relief is warranted, and the manner in which it should be accomplished.
 
 
 9
 Petitioners and intervenors contend that the orders should be set aside and the complaints dismissed primarily because Congress passed the Act to overturn the Commission's rulings, having determined that the FTC was wrong on the facts and had applied an improper legal standard, and because the record evidence establishes that the territorial exclusivity provisions are lawful under the standards of the Act. They also argue that remanding these cases to the Commission is inappropriate since the FTC could not properly find on the current record that the challenged restraints are unlawful under the Act, and since Congress passed that Act to bring this litigation to a prompt conclusion.
 
 
 10
 The Commission requests that this court set aside its orders and remand the proceedings to the Commission for dismissal in light of the Soft Drink Act, without further adjudication of the merits of the Commission's decisions. The Commission states that "(t)his request does not differ in substance from the relief sought by petitioners and intervenors", and that the Commission desires a remand for dismissal principally as a matter of procedural housekeeping "but also to give the Commission an opportunity to express its reasons for dismissing the proceedings." Resp.Supp. Brief, 2. The FTC contends that this relief is warranted because the Soft Drink Act established standards for judging the challenged restraints which differ from those applied by the Commission in holding the restraints unlawful under Section 5 of the Federal Trade Commission Act, and states that it does not request a remand for reconsideration of the decisions or supplementation of the record since the administrative proceedings in these cases were not initiated or conducted under the standards of the Soft Drink Act. Dismissal of these proceedings, the Commission concludes, would not preclude the institution of any future proceedings which might be warranted under the standards of the Act.
 
 
 11
 We start with the fundamental rule that agency orders which are based upon erroneous legal standards must fall. SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); Chan v. Immigration and Naturalization Service, 610 F.2d 651, 656 (9th Cir. 1979). By conceding that the legal standards it applied differ from those contained in the Soft Drink Act, the FTC has in effect brought these cases within this rule, for appellate courts generally apply the law in effect at the time a case is decided on appeal, see Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Given that the case was not tried under the standards prescribed by the new law, the FTC's orders must be set aside for this reason alone, or be remanded for trial under the 1980 statute. Since both parties request dismissal we comply with their request. Further review of the Commission's decisions is unnecessary; indeed, to decide whether the Commission's decisions were proper under the FTC Act, as it stood before the Soft Drink Act was passed, would be a useless exercise.
 
 
 12
 We also decline petitioners' invitations to set aside the Commission's orders on the grounds that the challenged provisions are lawful under the standards of the Soft Drink Act. First, since the Act was not passed until the administrative proceedings in these cases were completed, the Commission obviously did not know that the legality of the challenged provisions would be judged solely by whether the product distributed thereunder was "in substantial and effective competition with other products of the same general class in the relevant market or markets". The FTC therefore was not aware during the course of the administrative proceedings that it was required to develop a factual record addressed to this point. The burden of proof in this connection was also in dispute. Under these circumstances, we think it neither necessary nor appropriate to canvass the record which was developed in this case, and which was not specifically addressed to the Act, to determine whether the evidence contained therein would compel the conclusion that the challenged provisions are lawful under the standards of the new Act. This is especially true when it is remembered that our function, as a court of appeals, is to review administrative findings of fact and conclusions of law and not to make them initially ourselves. See e. g. Tri-Valley Packing Association v. FTC, 329 F.2d 694, 704 (9th Cir. 1964). Much less should we make them on suggestions distilled from congressional debates and statements in committee reports as petitioners suggest. Pet.Supp.Br., p. 20.
 
 
 13
 Second, consideration of this issue is completely unnecessary in light of our determination that the Commission's orders must be set aside because they are based upon legal standards which differ from those contained in the presently existing Soft Drink Act. Since petitioners and intervenors have obtained through legislative enactment the relief which they sought in this appeal, sound judicial administration counsels against investing further judicial resources in an issue whose resolution is not required to dispose of this case.[3]
 
 
 14
 Since we perceive no harm to petitioners and intervenors flowing from a return of these proceedings to the Commission solely for dismissal of the complaints, we accede to the FTC's request that the cases be remanded for that limited purpose. We see no reason at this late date, however, for the FTC to attempt to state any reasons for the dismissal. The reason is simply that the agency ruled on the legality of the challenged provisions under legal standards that differ from those contained in the subsequently enacted statute which, by virtue of its enactment, has acquired controlling significance. For this same reason the dismissal is without prejudice to any future proceedings that might be brought under the standards of the Soft Drink Act.
 
 
 15
 For the foregoing reasons, the orders appealed from are set aside, and the cases are remanded to the Commission for further proceedings not inconsistent with this opinion.
 
 
 16
 Judgment accordingly.
 
 
 
 *
 Circuit Judge Leventhal, a member of the panel which heard oral argument in this case, died before the case was decided
 
 
 [1]
 15 U.S.C. § 45(a)(1) provides:
 Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.
 
 
 [2]
 Judge Leventhal who had participated in the hearing also died in this intervening period between oral argument and passage of the Act
 
 
 [3]
 It better serves the general interest of the administration of justice if the court limits its resources to the determination of those questions and cases that must be decided, especially in view of the ever-mounting docket that besets this and other appellate courts
 United States v. Hooper, 432 F.2d 604, 606 (D.C.Cir.1970).